EXHIBIT A

State Court Action

5/28/2022 1:30 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 64951929
By: Courtni Gilbert
Filed: 5/31/2022 12:00 AM

CASE NO. _____

| | | |
|---|---|---|
| JOE ANTHONY ALANIZ, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| VS. | § | _____ JUDICIAL DISTRICT |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| SHERIFF ED GONZALEZ, | § | HARRIS COUNTY, TEXAS |
| DEPUTY VANESSA ESQUEDA, | § | |
| SGT. ANA ORTIZ, DEPUTY MARK | § | |
| CANNON | § | |
| Defendant. | | |

## PLAINTIFF'S ORIGINAL PETITION, AND JURY DEMAND

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Joe Anthony Alaniz ("Plaintiff" or "Mr. Alaniz") files this Complaint and Request for Jury Demand, and in support of his causes of actions, Plaintiff alleges the following:

## I. NATURE OF THE CASE

1.      This is a civil action arising as a result of Plaintiff's deprivation of his constitutional rights, and liberties to be free of excessive, unreasonable use of force, and unlawful arrest by Defendant, a state actor, that was acting under the color of law at the time Plaintiff's rights were violated, pursuant to the Fourth and Fourteenth Amendment of Constitution of the

Certified Document Number: 102207009 - Page 1 of 16

United States pursuant to the Civil Rights Act, Title 42 of the United States Code §§1981, 1983, 1985, and 1988.

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction over Plaintiff's federal claims, under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983, 1985, and 1988, as well as the Fourth, Eighth, and Fourteenth Amendments to the United States Constitutional and Federal laws.

2.      This case involves the use of excessive force and deprivation of constitutional rights belonging to Plaintiff by a state actor and/or under the color of state law which includes, but is not limited to, deprivation of Plaintiff's liberty and freedom interests from excessive and unreasonable force and cruel and unusual use of force.

3.      Venue is proper in this Court because the incident at issue took place in Harris County, Texas

## III. PARTIES

4.      Plaintiff, Joe Anthony Alaniz, is an individual who is a resident of Harris County, Texas.

5.      Defendant, Harris County, Texas is a governmental unit existing within Harris County.

6.      Defendant, Ed Gonzalez, in his official and individual capacity as Sheriff of Harris County. He may be served wherever he may be found,

Certified Document Number: 102207009 - Page 2 of 16

1

7.     Defendant, Sgt. Ana Ortiz, a state actor, in her individual capacity as an officer acting under the color of law for Harris County. She may be served wherever she may be found.

8.     Defendant, Deputy Cannon, a state actor, in his individual capacity as an officer acting under the color of law for Harris County. He may be served wherever he may be found.

9.     Defendant, Deputy Vanessa Esqueda, a state actor in her individual capacity as an officer acting under the color of law for Harris County. She may be served wherever she may be found.

## BACKGROUND FACTS

10.     Mr. Alaniz often rode his bike as advised by his physician for therapeutic purposes. He was diagnosed with a brain tumor that resulted in his current disability.

11.     The rides helped to calm, relax him, and cope with his disability. On Friday, May 29, 2020, Mr. Alaniz rode his bicycle along the feeder road of Interstate ten near Mckey and San Jacinto Street.

12.     He came upon a group of unknown individuals who were protesting and a group of Harris County, Sheriff's Office ("HCSO") Deputies, and Houston Police Department (HPD) Officers. He stopped his bike to assess the situation, and without explaining what was going on, Sergeant Ortiz asked Mr. Alaniz to move off the street onto the sidewalk, and he complied.

13.     Next, Deputy Cannon advised Mr. Alaniz to leave the sidewalk. He was asked to

2

move by the sergeant and join the protest group, but Mr. Alaniz tried to explain that he was not with the group. Cannon did not allow him to explain, cut him off, and expressed he did not care whether Mr. Alaniz was with the group or not.

14.     Mr. Alaniz tried to keep his distance from everybody and remain safe as he filmed live on Facebook the historical event unfolding in Houston. His right under the first amendment.

15.     Unbeknownst to Mr. Alaniz, the protestors and officers were gathered in the area as a result of the news and cell phone footage released of the killing of Houston native George Floyd by Minneapolis Police in Minneapolis, Minnesota.

16.     Mr. Alaniz was unaware of the protest and had no intentions of participating.

17.     Despite the distance that Mr. Alaniz kept from everyone, including officers and protestors, Deputy Cannon walked up to him and told him to get on his bike and ride away.

18.     Mr. Alaniz tried to explain, but Cannon gave Alaniz five seconds to navigate tall grass, weeds, and large rocks to ride away.

19.     Cannon began a count down, and when he got to the count of one, without considering that Mr. Alaniz could have any disabilities, Cannon grabbed Mr. Alaniz and flung him to the ground.

20.     Other unknown law enforcement personnel joined in using force against Mr. Alaniz until the officers handcuffed, and dragged him by his arms. Mr. Alaniz had trouble walking with the officer to a Harris County Sheriff's Office bus because he was being detained by the officers roughly, causing tension in his right shoulder. Deputy Vanessa Esqueda and Cannon

arrested him and placed him in a bus full of other arrestees.

21.    This action caused the dislocation of his right shoulder. Mr. Alaniz blacked out and has no memory while on the bus. He has a diagnosed disability, a brain tumor that he has been living with that makes him prone to seizures, and the need for therapeutic daily bike rides. Mr. Alaniz repeatedly screamed he did not do anything.

22.    Upon intake at the Harris County Joint Processing Center (JPC), he did not receive medical attention initially, nor was he ever explained the reason for his arrest.

23.    His $2200.00 Trek bicycle, which contained his wallet inside the emergency kit, was left at the scene. These items should have been placed on his personal property.

24.    All of the items were recovered four to five hours later by a Facebook viewer, Isac Saenz, who saw where Mr. Alaniz was on the live videos and came to the location.

25.    Mr. Alaniz was thankful to the gracious stranger.

26.    Thankfully, his property was left in the tall grass and weeds and could not be seen from the road.

27.    Intake officers documented there was an investigation hold for Mr. Joe Alaniz, and he was booked on May 30, 2020. Mr. Alaniz was released a day later.

28.    The items listed on the property were 1 shoe, 1 cellphone, 2 bracelets, a black shirt, and a pair of black shorts.

29.    Mr. Alaniz went to Herman Memorial Hospital Southeast Campus after his release.

30.    On Wednesday, June 3, 2020, after his release, he filed an Internal Affairs report gave

an interview and provided a sworn statement which initiated an investigation.

31.    Deputy Fosdick took pictures of his injuries during the interview to document the scrapes, scratches, swelling, and bruises over his body.

32.    Mr. Alaniz also provided Deputy Fosdick with the video he took of the incident before his arrest on Friday, May 29, 2020.

33.    Mr. Alaniz also signed multiple copies of the medical release form, so medical records from his visit to Southeast Herman Hospital on Monday, June 1, 2020, can be released.

34.    After IAD, Deputy Pierre Atkinson conducted a preliminary investigation and took statements, and photos from Mr. Alaniz information IAD shared with Deputy Mark Cannon.

35.    IAD waited nearly 5 months to investigate the concerns and take a statement from Ortiz, on Friday, October 30, 2020.

36.    The Harris County Sheriff's Office internal affairs department is comprised of officers that rotate in and out of the position for a temporary period from their regularly assigned duties as officers.

37.    It is not a dedicated position that an officer can be assigned to by the department.

38.    An IAD officer could be placed back on their regular assigned duty working side by side with an officer they were assigned to investigate the week before.

39.    An officer who has worked side by side with another officer for one week might be moved to the IAD temporary position and assigned to investigate that same officer for

5

Certified Document Number: 102207009 - Page 7 of 16

another week.

40.    The Harris County Sheriff's Office IAD division is flawed in that it pits fellow officers against one another.

41.    The result is that the investigating officer would have to weigh engaging in a meaningful investigation against a co-worker costing her or him their career or discipline and looking the other way, finding ways to minimize or cover up unreasonable or unconstitutional conduct then having to return to regular duty from their temporary IAD assignment after chosen from the forgoing decisions and deal with any consequences from the course of action they choose to take from the choices available.

42.    In addition to the flawed IAD practices, Harris County Sheriffs' Office promotes a practice of falsifying facts to gain probable cause to support an otherwise invalid arrest by failing to train and discipline its officers for knowingly making false statements and allegations to support an arrest.

43.    Even after an investigation and review of body-worn camera footage, there is no discipline and a blind eye is turned to captured violations.

44.    Mr. Alaniz had a history of brain tumors and seizures.

45.    After Cannon pushed him down onto rocks making him land on his elbows and knees.

46.    When he was released from custody he went to the hospital emergency room and complained of head injury bilateral legs and arms pain, and soreness everywhere. A radiology

6

report dated June 1, 2020, indicated findings are consistent with right acromioclavicular separation.

47.    Mr. Alaniz suffered an injured shoulder and was diagnosed with a right acromioclavicular separation.

48.    Lieutenant Batton admits the Houston Police Department lost Mr. Alaniz's paperwork but it was Harris County Sheriff's Deputies who made the arrest but failed to complete its own paperwork.

49.    Mr. Alaniz could not be arraigned until his paperwork was completed and he is placed in the system.

50.    There was body-worn camera footage of the incident from Deputy Mark Cannon and Sergeant Anna Ortiz. Cannon's body-worn camera had the audio turned off.

51.    Deputy Cannon and other officers placed Mr. Alaniz in handcuffs by other officers.

52.    Deputy Cannon dragged Mr. Alaniz to a Harris County Bus where he was given to other officers.

53.    HCSO Deputies left Mr. Alaniz's Trek bicycle, wallet, and other property at his arrest location.

54.    IAD confirmed there was no arrest report generated, or HCSO report generated. Mr. Alaniz's arrest was completely undocumented.

55.    The Harris County Sheriffs' Office also confirmed Deputy Cannon and Sergeant Ortiz both failed to document the use of force.

56.     Deputy Cannon admits to using force, although contrary to Mr. Alaniz's excessive force recollection, he claims the force was only enough necessary to apply the handcuffs on Mr. Alaniz.

57.     This is also the reason he failed to document the Use of Force and submit a Report, Mr. Alaniz complained of pain and injury.

58.     The Sheriff's IAD Disciplinary Committee investigated Sergeant Ortiz and Deputy Mark Cannon the committee believed some of Mr. Alaniz's version of the facts and partially sustained his complaint against Cannon.

59.     His IAD peers issued a flimsy letter of reprimand for leaving Mr. Alaniz's property while condoning and excusing the rest of Cannon's behavior. The committee, Sheriff Ed Gonzalez, and Susan Cotter failed to adequately disciple Cannon or Ortiz.

60.     Mr. Alaniz is a member of a protected class as a Latino male, with a disability.


## CAUSES OF ACTIONS

**42 U.S.C. §1983 Constitutional Rights Violations Pursuant to the First, Fourth, and Fourteenth Amendment & Bystander Liability.**

61.     Plaintiff adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

62.     Plaintiff asserts that Defendant Cannon is liable for excessive force, unreasonable use of force, and Ortiz, and Vanessa Esqueda for failing to protect Plaintiff from unreasonable

use of excessive force, and wrongful false arrest based on false imprisonment in violation of the 4th and 14th Amendments.

63.     Defendant Harris County is liable to Plaintiff for unreasonable use of force and excessive force and for bystanders failing to protect Plaintiff from unreasonable use of force and excessive force in violation of the Fourth and Fourteenth Amendments.

64.     Specifically, Defendant Harris County by and through its agents, staff, officers, employees, and jailers violated Plaintiff's Constitutional rights to be free from unreasonable and excessive force by causing injuries to Plaintiff, as a result of the unreasonable use of force.

65.     Defendant Harris County, acting under the color of law and within the scope of its responsibilities and/or employment and authority, intentionally and with conscious, callous, deliberate indifference deprived Plaintiff of his constitutional rights to be free from unreasonable and excessive use of force and seizure. As such, Plaintiff sues Harris County, as state actors acting under the color of law, pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's liberty and freedom interests.

## ADA Claims

66.     Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, and with regard to all causes of action.

67.     The ADA not only protects against disparate treatment against discrimination, it also creates an affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable accommodation.

68.     Harris County and Cannon had an affirmative duty to provide special, preferred treatment or reasonable accommodation to Mr. Alaniz based on his disability. Cannon was not trained by Gonzalez or Harris County to recognize, inquire, investigate or respond to a person with a disability and accommodate their special needs.

69.     This was also the case with Shekeitha Holman who was physically disabled when she encountered HCSO Deputies while in a wheelchair.

70.     They took her from her wheelchair and threw her to the ground like Cannon throw Mr. Alaniz to the ground, but they went further with Ms. Holman and tasered her, before wrongly falsely arresting her.

71.     The ADA makes it unlawful to fail to provide reasonable accommodations for the known physical or mental limitations of otherwise qualified individuals with disabilities unless the accommodations would impose an undue hardship on the operation of the business. Mr. Alaniz tried to explain himself to Deputy Cannon as he did the investigating officer that he was just riding his bike to alleviate the adverse effects he experienced due to his brain tumor, but Cannon would not allow it.

Certified Document Number: 102207009 - Page 11 of 16

### Ratification by Harris County and Pattern/ Practice of Excessive Force

72.     Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, and with regard to all causes of action.

73.     Plaintiff had his rights violated and was injured due to the policies, practices, customs, and procedures of Harris County.

74.     Defendant Harris County has a practice, custom, culture, procedure, and training of permitting and encouraging excessive force against suspects, inmates, and persons in their custody.

75.     No person was adequately disciplined or reprimanded after the investigation of this incident, thereby ratifying the conduct set forth above.

76.     Harris County either determined that there was partial misconduct and violation and just a menial error occurred or failed to investigate and excuse any excessive and unreasonable use of force and failure to protect from excessive and unreasonable use of force was consistent with departmental policy and created in the department and expectation of impunity for the use of excessive and unreasonable use of force and failure to protect.

77.     Defendant Harris County and its deputies have a pattern, and practice of using excessive force on its citizens and failing to protect them.

78.     Harris County and Gonzalez failed to train, and supervise its agents, staff, officers, employees, and jailers.

79.     Defendant Harris County has a practice, custom, culture, procedure, and training of permitting and failing to discourage its agents, staff, officers, employees, and jailers not to use excessive and unreasonable use of force against persons in its custody.

80.     Defendant's policies, practices, and/or customs were a moving force in causing the unconstitutional conduct alleged herein. Plaintiff intends to show that there was a failure to supervise and correct the wrongful and illegal behavior of its agents, staff, officers, employees, and jailers; there was a culture of silence and toleration of such conduct, and there was a failure to train resulted in the unreasonable force and false arrest, as well as First Amendment violation for denying his right to speech, and record.


## VI. <u>ATTORNEY'S FEES</u>

81.     Plaintiff is entitled to recover attorney's fees and costs to enforce his constitutional rights under 42 U.S.C. § 1981, 1982, 1983, 1985, and 1988 from Defendant.

## VII. <u>JURY TRIAL</u>

82.     Plaintiff demands trial by jury on all issues triable to the jury.

## VIII. <u>DAMAGES</u>

83.     As a direct and proximate result of the occurrence made the basis of this lawsuit, and Defendants' acts as described herein, Plaintiff was caused to suffer loss, and to endure anxiety, pain, injury, surgery, and illness resulting in damages more fully set forth below.

84.     As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff has incurred the following damages:

a.     Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff for the necessary care and treatment of his injuries resulting from the incident complained of herein, and such charges are reasonable and were usual and customary charges for such services in Harris County, Texas;

b.     Reasonable and necessary medical care and expenses which will, in all reasonable probability, be incurred in the future;

c.     Physical pain and suffering in the past and Physical pain and suffering in the future;

d.     Mental anguish in the past and Mental anguish in the future;

e.     Physical impairment in the past, and Physical impairment which, in all reasonable probability, will be suffered in the future;

f.     Loss of Household Services in the past and Loss of Household Services in the future;

g.     Disfigurement in the past and Disfigurement in the future;

h.     Cost of medical monitoring and prevention in the future; and

i.     Punitive damages.

j.     And attorney fees

**PRAYER FOR RELIEF**

Certified Document Number: 102207009 - Page 14 of 16

Plaintiff prays for judgment on his behalf against Defendant and asks this Court, after impaneling a jury and accepting the presentation of evidence, to enter judgment in favor of Plaintiff and against Defendant and to be identified in at least the following particulars:

A.    Enter judgment for Plaintiff against Defendant;

B.    Find that Plaintiff is the prevailing party in this case and award attorney's fees and costs, pursuant to federal law, as noted against Defendant;

C.    Award damages to Plaintiff for the violation of his Constitutional rights claims;

D.    Award pre-and post-judgment interest;

E.    Award punitive damages against Defendant;

F.    Cost of court; and

G.    Grant such other and further relief as appears reasonable and just, to which, Plaintiff shows himself entitled.

Respectfully submitted,
By: /s/U.A. Lewis
Lewis Lewis Law Group
U.A. Lewis
Texas Bar No. 24076511
PO BOX 27353
Houston, TX 77227
T(713) 570-6555
F (713) 581-1017
Attorney for Plaintiff
myattorneyatlaw@gmail.com

Certified Document Number: 102207009 - Page 15 of 16

14

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

U.A. Lewis on behalf of U.A. Lewis
Bar No. 24076511
myattorneyatlaw@gmail.com
Envelope ID: 64951929
Status as of 5/31/2022 8:36 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| U.A. LEWIS | | MYATTORNEYATLAW@GMAIL.COM | 5/28/2022 1:30:43 PM | SENT |
| U.A. Lewis | | office@thelewislaw.com | 5/28/2022 1:30:43 PM | SENT |

Certified Document Number: 102207009 - Page 16 of 16



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   June 16, 2022


Certified Document Number:        102207009 Total Pages:  16


Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS


**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**