United States District Court
Southern District of Texas
**ENTERED**
April 01, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE ANTHONY ALANIZ, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:22-cv-01991 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| HARRIS COUNTY, *et al*, | § | |
| Defendants. | § | |

OPINION AND ORDER
ON MOTIONS TO DISMISS

The motion by Defendant Sheriff Ed Gonzalez to dismiss the second amended complaint by Plaintiff Joe Anthony Alaniz is granted. Dkt 62.

The motion to dismiss by Deputy Mark Cannon is denied. Dkt 45.

1. Background

This action arises from the arrest of Joe Anthony Alaniz, during which he says Deputy Mark Cannon and Sheriff Ed Gonzalez violated his civil rights. The following facts are alleged in his complaint.

Alaniz has or had a brain tumor, suffers from seizures, and often rides his bicycle for therapeutic purposes. Dkt 39 at ¶10. On May 29, 2020, he was riding in the downtown area of Houston when he encountered people gathered to protest the recent death of George Floyd. Id at ¶11. Alaniz stopped and began filming the incident, streaming it to Facebook Live. Id at ¶13.

His narrative of the encounter is as follows:

> 12. . . . He stopped his bike to assess the situation, and without explaining what was going on, HCSO Sergeant Ortiz asked

Mr. Alaniz to move off the street onto the sidewalk, and he complied.

. . .

15. Mr. Alaniz was unaware of the protest and had no intentions of participating. Mr. Alaniz kept a distance from everyone, including officers and protestors, Deputy Cannon walked up to him and told him to get on his bike and ride away with the group.

16. Deputy Cannon advised Mr. Alaniz to leave the sidewalk in conflict to the orders Alaniz received from HCSO Sergeant Ortiz. He was then asked to move by the sergeant and join a protest group, but Mr. Alaniz tried to explain that he was not with the group. Cannon did not allow him to explain, cut him off, and expressed he did not care whether Mr. Alaniz was with the group or not, Alaniz had to go with the group.

17. As Mr. Alaniz tried to explain, Cannon gave Alaniz five seconds to navigate tall grass, weeds, and large rocks to ride away.

18. Cannon began to aggressively count down, 5, 4, 3, 2, and when he got to the count of one, without considering that Mr. Alaniz could have any disabilities, Cannon did not give any instructions to allow Mr. Alaniz to comply with any detention efforts.

19. Cannon grabbed Mr. Alaniz and flung him to the ground.

20. Other unknown law enforcement personnel swarmed in and joined in using force against Mr. Alaniz until the officers handcuffed and dragged him by his arms.

> 21. He did not argue with the officers when they unlawfully demanded he leave from the open field. Despite Mr. Alaniz being fully compliant as he attempted to leave as ordered.
>
> 22. Other unknown law enforcement personnel joined in using force against Mr. Alaniz until the officers handcuffed and dragged him by the arms.
>
> . . .
>
> 43. Cannon pushed him down onto rocks, making him land on his elbows and knees. . . .

Dkt 39 at ¶¶12, 15–22 & 43. Alaniz further characterizes the force as "the malicious striking, dragging and pulling of the submissive plaintiff who sought to explain facts to Cannon." Id at ¶47.

A bicycle, wallet, and other property belonging to Alaniz were left at the scene. Id at ¶¶28, 36. No arrest report was generated, and he was never arraigned. When released from the Harris County Joint Processing Center, Alaniz went to the hospital and "was diagnosed with a right acromioclavicular [shoulder] separation." Id at ¶¶25, 46.

Alaniz filed a complaint with the Internal Affairs Disciplinary Committee of the Harris County Sheriff's Office in June 2020. The Disciplinary Committee investigated the incident. It "partially sustained" Alaniz's complaint against Deputy Cannon, who was reprimanded for leaving Alaniz's property at the scene. Id at ¶¶50, 62.

Alaniz filed his original complaint in state court in May 2022, alleging §1983 claims for false arrest, excessive force, and failure to protect from excessive force against Deputy Cannon, Sheriff Gonzalez, Deputy Vanessa Esqueda, and Sergeant Ana Ortiz. Dkt 1-1 at 10–11. He asserted similar claims against Harris County, including claims under the Americans with Disabilities Act. Id at 11–12.

Defendants removed. Dkt 1. Deputy Canon moved to dismiss, and Alaniz amended his complaint. Dkts 8 & 12.

Defendants then moved to dismiss all claims against them. Dkts 15 (Harris County), 16 (Gonzalez), & 19 (Cannon). Alaniz filed no opposition. The motions were thus granted, and the first amended complaint was dismissed without prejudice Dkt 23.

Alaniz filed a motion for reconsideration and a motion to amend. Dkts 25 & 29. The motion to amend was granted, but the claims against Deputy Esqueda and Sergeant Ortiz were later dismissed again for failure to serve them. Dkts 28 & 35.

Alaniz filed a second amended complaint as permitted. Dkt 39. Defendants again moved to dismiss all claims. Dkts 42 (Harris County), 44 (Gonzalez) & 45 (Cannon).

At hearing on May 10, 2023, the motion by Harris County was denied as to the *Monell* claims under §1983, but granted as to the claims under the ADA and §§1981, 1982, and 1985, which were dismissed with prejudice. Additionally, the motion by Sheriff Gonzalez was denied as to the claims against him in his official capacity, but granted as to the claims against him in his individual capacity, which were dismissed without prejudice. It was also noted that counsel for Deputy Cannon failed to appear. Decision was thus reserved on his motion, with inclination indicated to deny it with the potential to raise qualified immunity at summary judgment. Deputy Cannon was ordered to file a status report by May 22, 2023, stating whether, as to qualified immunity, he wished his motion to be determined now or reserved for summary judgment. Alaniz was also ordered to file any motion seeking leave to replead dismissed claims by June 9, 2023. Dkt 54.

Deputy Cannon then timely filed his status report as ordered, wherein he requested a written ruling on his motion to dismiss. Dkt 56. He also filed a copy of the video recording that Alaniz made on the day in question. Dkt 60. And Alaniz untimely filed a request for leave to supplement the second amended complaint. Dkt 61.

Now pending are the following motions or requests: (i) the motion by Deputy Cannon to dismiss the second

amended complaint, Dkt 45; (ii) the request by Alaniz to supplement his second amended complaint as against Sheriff Gonzalez, Dkt 61; (iii) a further motion by Sheriff Gonzalez to dismiss what's left of the second amended complaint as against him, to the extent the supplement is accepted, Dkt 62; and (iv) a motion by Alaniz to strike his own video as submitted by Deputy Cannon. Dkt 63.

2. Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court holds that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id at 678, quoting *Twombly*, 550 US at 557.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court "must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019). But "courts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Vouchides v Houston Community College System*, 2011 WL 4592057, *5 (SD Tex), quoting *Gentiello v Rege*, 627 F3d 540, 544 (5th Cir 2010). The court must also generally limit itself to the contents of the pleadings and attachments thereto. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014).

3. Claims against Deputy Cannon

Deputy Cannon contends that he's entitled to qualified immunity against Alaniz's claims. The Fifth Circuit holds, "The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 and would overcome their qualified immunity defense." *Guerra v Castillo,* 82 F4th 278, 285 (5th Cir 2023), quoting *Terwilliger v Reyna,* 4 F4th 270, 279-80 (5th Cir 2021) (internal quotations and citations omitted); see also, *Backe v LeBlanc*, 691 F3d 645, 648 (5th Cir 2012); *Zapata v Melson*, 750 F3d 481, 485 (5th Cir 2014). "It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." Ibid (internal citations omitted). "To meet this burden, the plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Turner v Lieutenant Driver,* 848 F3d 678, 685 (5th Cir 2017), quoting *Whitley v Hanna,* 726 F3d 631, 638 (5th Cir 2013) (internal citations omitted).

a. Video evidence

Alaniz objects to consideration of his own video footage with respect to the pending motions to dismiss. Dkt 63. Deputy Cannon submitted it on the docket after the initial hearing on the motions. Dkt 60.

6

The second amended complaint makes clear that the pleaded claims follow from incidents that occurred after Alaniz stopped to video certain protests related to the death of George Floyd. As such, that video will be evidence in this case to the extent that it goes forward. Indeed, he specifically pleads, "Mr. Alaniz also provided Deputy Fosdick with the video he took of the incident before his arrest on Friday, May 29, 2020."

The Fifth Circuit recently held that it's permissible for a court to review appended video evidence crucial to pleaded claims when considering a motion to dismiss, but that doing so implicitly converts the motion into one for summary judgment. *Hodge v Engleman*, 90 F4th 840, 845 (5th Cir 2024). Deputy Cannon nowhere requests that his motion be converted to one for summary judgment. See Dkts 45 (motion), 56 (status report) & 68 (response to Plaintiff's objection). Alaniz specifically opposes it absent allowance for discovery. Dkt 63 at 5.

The motion by Alaniz to disregard his video footage will be granted. The motion to dismiss by Deputy Cannon has thus been considered solely on the pleadings, with neither review of nor consideration given to any video recording.

Still, the objection by Alaniz to consideration of his own video is curious. And notably, the response by Sheriff Gonzalez and Deputy Cannon on this point specifically states that the video "is indeed inconsistent with [Alaniz's] course of conduct and pleadings." Dkt 68 at 2. Counsel to Alaniz will thus be reminded regarding the obligations of Rule 11 of the Federal Rules of Civil Procedure, with admonishment that sanctions will attach with respect to any misrepresentations apparent in the second amended complaint once the video is reviewed, and that any correction or withdrawal of allegations or argument not supportable in good faith must be made promptly.

      b. Analysis

Alaniz asserts two claims under section §1983 against Deputy Cannon in his individual capacity, being excessive force and false arrest. Dkt 39 at ¶77.

7

i. Excessive force

The elements of a claim for excessive force are (i) injury, (ii) the injury resulted directly and only from a use of force that was clearly excessive, and (iii) the excessiveness of the force was clearly unreasonable. See *Taylor v Hartley*, 488 F Supp 3d 517, 532 (SD Tex 2020), quoting *Trammell v Fruge*, 868 F3d 332, 340 (5th Cir 2017), in turn quoting *Deville v Marcantel*, 567 F3d 156, 167 (5th Cir 2009).

The parties don't dispute that Alaniz was injured during his arrest. Contention focuses on the second and third elements.

The Fifth Circuit has at length addressed qualified immunity in the context of excessive-force claims:

> In excessive force cases, "[t]he second prong of the [qualified immunity] analysis 'is [itself] better understood as [encompassing] two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Tarver v City of Edna*, 410 F3d 745, 750 (5th Cir 2005), quoting *Felton v Polles*, 315 F3d 470, 477 (5th Cir 2002). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v Rickard*, 572 US 765, 778–79 (2014). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver*, 410 F3d at 750.

*Tucker v City of Shreveport*, 998 F3d 165, 172 (5th Cir 2021). The Fifth Circuit also stresses that this inquiry is limited to

what the pertinent officer knew at the time of the challenged action:

> When evaluating a qualified immunity defense, courts "consider[ ] only the facts that were knowable to the defendant officers." *White v Pauly*, 580 US 73, 77 (2017, *per curiam*); see also *Cole*, 935 F3d at 456. "Facts [that] an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant." *Hernandez v Mesa*, 582 US 548, 554 (2017, *per curiam*); *Brown v Callahan*, 623 F3d 249, 253 (5th Cir 2010) ("An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight.").

*Tucker*, 998 F3d at 173.

Whether force is reasonable depends on the *Graham* factors, being (i) the severity of the crime at issue, (ii) whether the suspect poses an immediate threat to the safety of the officers or others, and (iii) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Hanks v Rogers*, 853 F3d 738, 745 (5th Cir 2017), quoting *Graham v Connor*, 490 US 386, 396 (1989).

As noted above, present inquiry is limited to the allegations and requires accepting the pleaded facts as true while viewing them in a light most favorable to Alaniz. *Walker*, 938 F3d at 735. By that standard, the force used by Deputy Cannon could—if those facts are borne out as true—be found excessive. True, Alaniz admits that he was given time to respond to Deputy Cannon's first and second set of instructions. Dkt 39 at ¶¶15–20. And the Fifth Circuit does hold that it's permissible for officers to "consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v Marcantel*, 567 F3d 156, 167 (5th Cir 2009). Even so, "officers must assess not only the need for force, but also 'the relationship between the need

9

and the amount of force used.'" Ibid. And it also holds that "where an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammell v Fruge*, 868 F3d 332, 341 (5th Cir 2017) (internal citation omitted).

For example, in line with these precepts, the Fifth Circuit has stated that when "an individual stopped for a minor traffic offense offers, at most, passive resistance and presents no threat or flight risk, abrupt application of physical force rather than continued verbal negotiating . . . is clearly unreasonable and excessive." *Hanks*, 853 F3d at 748. And more to the point, the "mere failure or refusal to obey an officer's command is passive, not active, resistance." *Cobbins v Sollie*, 2023 WL 4015303, at *5 (5th Cir 2023).

The second amended complaint at most indicates passive resistance, with no suggestion of threat or risk of flight. To be clear, the pleading notes that Alaniz *did* fail to comply with instructions to move along. But it does *not* indicate that he acted in a violent manner or attempted to flee. Instead, Alaniz "tried to explain" the situation to Deputy Cannon and attempted to navigate the grass. Dkt 39 at ¶¶15–20. And, at least according to the pleading, when faced with this conduct, Deputy Cannon resorted to force almost immediately. To the contrary, the Fifth Circuit counsels that "the quickness with which the officers resorted to tackling [the plaintiff] to the ground militates against a finding of reasonableness." *Trammell*, 868 F3d at 342.

For his part, Deputy Cannon points to nothing in the pleading suggesting that Alaniz presented a threat of violence or risk of flight, or that he was otherwise undertaking physical action that required application of the amount of force alleged. Nor does Deputy Cannon cite any cases establishing that—on similarly pleaded facts, and contrary to the propositions from the above cases—the abrupt and concerted application of force was permissible.

Based on the facts as pleaded by Alaniz, and in light of substantial Fifth Circuit precedent, it can't be said that "every reasonable officer" would view Deputy Cannon's

10

actions as lawful. *Mullenix v Luna*, 577 US 7, 11 (2015), quoting *Reichle v Howards*, 566 US 658, 664 (2012). He thus isn't entitled to qualified immunity as to this claim. The motion to dismiss will thus be denied in that respect.

### ii. False arrest

In addition to the allegations above as to Alaniz's arrest, the second amended complaint alleges that (i) no one "ever explained the reason for his arrest," (ii) he was "released a day later," and (iii) "there was no arrest report generated." Dkt 39 at ¶¶38, 41, 59. Alaniz alleges on this basis that Deputy Cannon is liable for "wrongful false arrest" in contravention of the Fourth and Fourteenth Amendments. Dkt 39 at ¶77.

To assert a valid false-arrest claim under §1983, Alaniz must show that Deputy Cannon "did not have probable cause to arrest him." *Anokwuru v City of Houston*, 990 F3d 956, 963 (5th Cir 2021), quoting *Haggerty v Texas Southern University*, 391 F3d 653, 655 (5th Cir 2004) (citation omitted). "The existence of probable cause for any offense, including one not charged, is sufficient to defeat a § 1983 false arrest claim." *Shemwell v Cannon*, 352 F Supp 3d 690, 701 (ND Tex 2019), citing *Devenpeck v Alford*, 543 US 146, 153–54 (2004). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty*, 391 F3d at 655–56 (quotation omitted).

Pertinent here, Deputy Cannon is entitled to qualified immunity if "a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair probability that [the suspect] had committed or was committing an offense." Id at 656, citing *Glenn v City of Tyler*, 242 F3d 307, 313 (5th Cir 2001). The Fifth Circuit in *Club Retro LLC v Hilton* explained the *clearly established* prong in this regard this way:

> The Fourth Amendment right to be free from false arrest—arrest without probable cause—was clearly established at the time of [plaintiffs'] arrests. Nonetheless, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.'" Thus, plaintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrests.

568 F3d 181, 206–07 (5th Cir 2009) (citations omitted) (followed by conclusion that plaintiffs alleged facts showing that officers lacked arguable probable cause to arrest plaintiffs).

Deputy Cannon argues that he had probable cause that Alaniz was committing two offenses, being (i) resisting arrest, and (ii) disobeying a reasonable order to move. Dkt 45 at 14–18.

*As to resisting arrest,* §38.03 of the Texas Penal Code provides in part:

> (a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.
>
> (b) It is no defense to prosecution under this section that the arrest or search was unlawful.

The motion states, "The great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest." Dkt 45 at 16 (citing cases). And it argues, "Deputy Cannon could have reasonably concluded that Alaniz committed the offense of resisting arrest when

he pulled away from Deputy Cannon and argued that he was not a protester or with the 'group.'" Id at 17.

When the video is eventually reviewed, it may be clear that Alaniz pulled away from Deputy Cannon. But notably absent in the second amended complaint is any suggestion to that effect. Instead, the allegations indicate only that Deputy Cannon asked Alaniz to move and shortly thereafter threw him to the ground. Dkt 39 at ¶¶15–19. It's thus plausible to conclude—based solely, at this point, on the allegations—that Cannon didn't have arguable probable cause to believe Alaniz was resisting arrest.

*As to disobeying a reasonable order to move,* §42.03 of the Texas Penal Code provides in part:

> (a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:
>
> . . .
>
> (2) disobeys a reasonable request or order to move issued by a person the actor knows to be or is informed is a peace officer, a fireman, or a person with authority to control the use of the premises:
>
> (A) to prevent obstruction of a highway or [sidewalk, street, or other place used for passage].
>
> . . .
>
> (b) For purposes of this section, 'obstruct' means to render impassable or to render passage unreasonably inconvenient or hazardous.

The statute on its face is quite broad, but it textually requires *obstruction* rendering some passage *impassable*, *unreasonably inconvenient*, or *hazardous*. See *Lauderback v State*, 789 SW2d 343, 346 (Tex App 1990). Deputy Cannon points to nothing in the second amended complaint suggesting this to be true. To the contrary, the complaint alleges that Alaniz complied with the previous order of another officer "to move off the street onto the sidewalk,"

after which he "kept a distance from everyone, including officers and protesters." Dkt 39 at ¶¶12, 15. As such, and again limited solely to the allegations, an inference is plausible that Cannon lacked arguable probable cause to arrest Alaniz for disobeying an order to move.

Alaniz pleads sufficient facts to indicate that Deputy Cannon didn't have probable cause to arrest him. The motion to dismiss will thus be denied in this regard.

### 4. Claims against Sheriff Gonzalez

As noted, a prior motion to dismiss by Sheriff Gonzalez was denied as to claims against him in his official capacity, but granted as to claims against him in his individual capacity. Dkt 54 at 2. That order noted that Alaniz must seek leave to replead those individual claims by June 9, 2023, or the claims would be dismissed with prejudice. Ibid.

Without explanation, Alaniz purported to file such request a day late, on June 10, 2023. Dkt 61. That request is untimely and will be denied for failure to comply with prior order.

In addition, the request is deficient on its face, given that it doesn't actually request leave. Instead, it's a single paragraph devoid of explanation or legal authority that would justify the filing, simply followed by twelve pages of factual narrative as putative supplement. With no legal argument to establish that leave is warranted, the request will also be denied on this basis.

The pending motion to dismiss by Sheriff Gonzalez proceeds first on objection that the supplement is untimely. Dkt 62 at 2. The balance of his motion proceeds on the merits if the supplement is allowed. Id at 2–10. The merits needn't be considered, given the above ruling. But for the sake of completeness, even as supplemented, the claims by Alaniz against Sheriff Gonzalez in his individual capacity fail as a matter of law for the reasons and on the basis of the authorities cited in his motion, being (i) he isn't alleged to be personally involved in the incident and isn't subject to vicarious liability, id at 6–8; (ii) Alaniz fails to identify any specific policy that allegedly caused a violation of

constitutional rights or to establish a factual basis suggesting a custom of violating citizen's constitutional rights, id at 8; (iii) Alaniz makes only unsubstantiated, conclusory allegations that Sheriff Gonzalez failed to train or supervise, id at 9; and (iv) no viable claim is stated individually against Sheriff Gonzalez under §1981 because there's no contractual agreement between him and Alaniz, id at 9–10.

The second amended complaint simply doesn't plead a plausible claim against Sheriff Gonzalez in his individual capacity. The claims against him in his individual capacity will thus be dismissed.

### 5. Potential for repleading

A district court "should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). The Fifth Circuit holds that this evinces a bias in favor of granting leave to amend. See *Dussouy v Gulf Coast Investment Corp*, 660 F2d 594, 597(5th Cir 1981); *Carroll v Fort James Corp*, 470 F3d 1171, 1175 (5th Cir 2006). But whether to grant such leave is within the sound discretion of the district court. *Pervasive Software Inc v Lexware GmbH & Co KG*, 688 F3d 214, 232 (5th Cir 2012), quoting *Wimm v Jack Eckerd Corp*, 3 F3d 137, 139 (5th Cir 1993). It may be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v Chapman*, 969 F3d 238, 248 (5th Cir 2020), citing *Smith v EMC Corp*, 393 F3d 590, 595 (5th Cir 2004).

The operative pleading here is Plaintiffs' second amended complaint. Dkt 39. Alaniz amended his original complaint when faced with an initial motion to dismiss. Dkts 8 & 12. The first amended complaint was then dismissed without prejudice upon motions by Harris County, Sheriff Gonzalez, and Deputy Cannon to which Alaniz didn't even bother to respond. Dkt 23; see Dkts 15, 16 & 19. He was then upon request allowed one more chance to plead his claims in his second amended complaint. Dkt 35 at 2. And as determined above, after filing that complaint, he failed to observe prior order

allowing him to seek leave to further amend his pleading, by filing late and without stating grounds to justify leave.

This procedural history reflects that Alaniz has repeatedly failed to cure previously deficient pleadings. It also indicates that further pleading would be futile and evince undue delay. And the refusal of Alaniz to have his videotape reviewed and compared to his written allegations suggests bad faith.

Further attempt at repleading will not be allowed.

### 6. Conclusion

The motion by Plaintiff Joe Anthony Alaniz to disregard his videotape is GRANTED. Dkt 63.

The request by Alaniz to supplement his second amended complaint is DENIED. Dkt 61.

The motion by Defendant Sheriff Ed Gonzalez to dismiss the second amended complaint as to claims against him in his individual capacity is GRANTED. Dkt 62. Those claims are DISMISSED WITH PREJUDICE. See Dkt 54 at 2.

The motion to dismiss by Defendant Deputy Mark Cannon is DENIED.

Counsel to Alaniz is REMINDED of the requirements of Rule 11 of the Federal Rules of Civil Procedure. Counsel is ADMONISHED that (i) there will harsh consequences, including the potential for sanctions, if the allegations of the second amended complaint are contrary in material respect to what is seen on the Alaniz videotape, once reviewed by the Court, and (ii) if any correction of the record is necessary, or if any pleading or assertion within a pleading should be withdrawn as insupportable in good faith in view of the video, such correction or retraction must be made by April 30, 2024.

SO ORDERED.

Signed on March 31, 2024, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge