Page 1

1                    IN THE UNITED STATES DISTRICT COURT

2                    FOR THE SOUTHERN DISTRICT OF TEXAS

3                              HOUSTON DIVISION

4    JOE ANTHONY ALANIZ              §    CASE NO. 4:22-cv-01991
                                     §    HOUSTON, TX
5    VERSUS                          §    TUESDAY,
                                     §    APRIL 22, 2025
6    HARRIS COUNTY, ET AL.           §    2:44 PM to 4:11 PM

7                              MOTION HEARING

8              BEFORE THE HONORABLE CHARLES R. ESKRIDGE III
                          UNITED STATES DISTRICT JUDGE
9
                                 APPEARANCES:
10

11       FOR THE PARTIES:                SEE NEXT PAGE

12       ELECTRONIC RECORDING OFFICER: BRITTANY NICKLAUS

13       COURT CLERK:                    JENNELLE GONZALEZ

14

15

16

17

18

19

20

21                       TRANSCRIPTION SERVICE BY:

22                       Veritext Legal Solutions
                         330 Old Country Road, Suite 300
23                            Mineola, NY 11501
                     Tel: 800-727-6396 ▼ www.veritext.com
24
        Proceedings recorded by electronic sound recording; transcript
25              produced by transcription service.

```
 1                              APPEARANCES:

 2    FOR THE PLAINTIFF:            THE LEWIS LAW GROUP
                                   U.A. Lewis
 3                                 P.O. Box 27353
                                   Houston, TX 77227
 4                                 713-570-6555

 5
      FOR THE DEFENDANTS:          HARRIS COUNTY ATTORNEY'S OFFICE
 6                                 Suzanne Bradley
                                   1019 Congress, 15th Floor
 7                                 Houston, TX 77002
                                   713-274-5330
 8
                                   HARRIS COUNTY ATTORNEY'S OFFICE
 9                                 DEFENSIVE LITIGATION
                                   James Carroll Butt
10                                 1019 Congress
                                   Houston, TX 77002
11                                 713-274-5133

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              HOUSTON, TEXAS; TUESDAY, APRIL 22, 2025; 2:44 PM
 2              CLERK:  The United States District Court for the
 3    Southern District of Texas is now in session.  The Honorable
 4    Charles Eskridge, presiding.  God save the United States and
 5    God save this honorable court.
 6              THE COURT:  Thank you, everyone.  Please be seated.
 7    All right.  A call for hearing cause 23-245, Joe Anthony Alaniz
 8    v. Harris County.  And remaining at issue also are Sheriff Ed
 9    Gonzalez and Deputy Mark Cannon.  Can I get appearance of
10    counsel please?
11              MS. LEWIS:  Good afternoon, Your Honor.  U.A. Lewis
12    for the plaintiff Joe Alaniz.
13              THE COURT:  Thank you, Ms. Lewis.
14              MS. BRADLEY:  Thank you, Your Honor.  Suzanne Bradley
15    for Deputy Cannon.  And I think Sheriff Gonzalez is only in his
16    official capacity.
17              THE COURT:  Oh, okay.  So then --
18              MS. BRADLEY:  Dismissed him about a year ago.
19              THE COURT:  Okay.  Official capacity.
20              MS. BRADLEY:  Which is Harris County.
21              THE COURT:  Yeah.  All right.
22              MR. BUTT:  Good afternoon, Your Honor.  Jim Butt on
23    behalf of Harris County.
24              THE COURT:  Okay.  All right.  Thank you.  All right.
25    So I have motions for summary judgment pending at 97 from
```

1    Harris County and Docket 98 from Deputy Cannon, correct?

2              MS. BRADLEY:  Yes.

3              THE COURT:  And is there anything else pending before

4    me right now?  There had been a motion about deemed omissions,

5    but I ruled on that.  But I have all the video evidence in

6    front of me, which I've taken a look at and all the other

7    submitted evidence.  So...

8              MS. BRADLEY:  And Ms. Lewis filed some motions in

9    limine.  We responded.

10             THE COURT:  Okay.

11             MS. BRADLEY:  But for clarity to the Court, if the

12   Court is of a mind to deny Deputy Cannon's qualified immunity,

13   which is really the basis of my summary judgment --

14             THE COURT:  Yeah.

15             MS. BRADLEY:  -- you know, I won't move to stay the

16   case so I --

17             THE COURT:  Of course.  I figured you would be taking

18   an appeal.  Is the motions in limine, is that for purposes of

19   --

20             MS. BRADLEY:  Trial wise --

21             MS. LEWIS:  We just had the trial.  It was still on

22   the trial docket.  I just didn't --

23             THE COURT:  For trial.

24             MS. LEWIS:  Yeah.  Just --

25             THE COURT:  Okay.

```
 1                    MS. LEWIS:  -- in an abundance of caution.
 2                    THE COURT:  Yeah.  It's not as to the evidence that
 3     I'm going to be looking at on the motion.
 4                    MS. LEWIS:  No.
 5                    THE COURT:  Okay, great.
 6                    MS. BRADLEY:  No.
 7                    THE COURT:  All right.  That's fine.  Have you all
 8     done -- you haven't submitted pre-trial filings yet, have you?
 9                    MS. LEWIS:  No, we did not.  I believe there's a
10     pending motion for all that to stay.
11                    THE COURT:  Yeah.
12                    MS. LEWIS:  So, yeah.  I --
13                    THE COURT:  But there just happens to be a motion in
14     limine that you filed?
15                    MS. LEWIS:  I was already in the action of doing it,
16     yeah.  So I just went -- yeah, so I went ahead and filed it.
17     They responded.  And I'm not sure if they filed -- I don't --
18     did you guys file a motion in limine?
19                    MS. BRADLEY:  No.
20                    MS. LEWIS:  Okay.
21                    MS. BRADLEY:  We just responded.
22                    MS. LEWIS:  Yeah, just -- it was just me.
23                    THE COURT:  What was the limine on?
24                    MS. LEWIS:  Probably standard stuff.  I don't know,
25     Your Honor.  Is that the --
```

1          THE COURT:  Standard stuff?  Okay.

2          MS. LEWIS:  Yeah, there was not a -- anything that

3   stands out particularly I don't think.

4          THE COURT:  I --

5          MS. BRADLEY:  I have our response here if you want to

6   see it.  It's just a copy of Ms. Lewis' (indiscernible).

7          THE COURT:  I actually think -- I mean, given the

8   posture where it is and so that we don't lose it in the passage

9   of time, just depending on what I rule here -- well, there's

10  going to be a passage of time either way.  I'm going to deny

11  the motion without prejudice.  There will be a time in which to

12  make pre-trial filings and motions in limine can come in then.

13         MS. LEWIS:  I understand.

14         THE COURT:  Okay?

15         MS. LEWIS:  Thank you, Your Honor.

16         THE COURT:  All right.  And you can resubmit it as is

17  if you want, but I'm just terminating it -- denying it without

18  prejudice now on my docket.

19         MS. LEWIS:  Absolutely.

20         THE COURT:  So that was as to Docket 111.

21         MS. LEWIS:  Yes.

22         THE COURT:  I just don't want that to fall through

23  the cracks later with motions that come in.  Okay.  So let's

24  turn to summary judgment motions, and let's do -- we're going

25  to do Deputy Cannon first?

1              MS. BRADLEY:  Sure.

2              THE COURT:  Yeah.

3              MS. BRADLEY:  If that's all right.

4              THE COURT:  Are you going to argue both, or just --

5              MS. BRADLEY:  No, I'm just going to do Cannon and Mr.

6    Butt's going to do Harris County.

7              THE COURT:  Okay.  All right.  Go ahead.

8              MS. BRADLEY:  Okay.  I don't know how fulsome you

9    want me to get on this, Judge.  I know you've read them, looked

10   at them, but basically this is a qualified immunity argument

11   for Deputy Cannon.  And the two prongs of qualified immunity,

12   of course, is, was there a constitutional right that was

13   violated?  And was it clearly established at the time?

14             It's plaintiff's burden to -- it's a burden shifting.

15   She has to disprove that, that he's not entitled to qualified

16   immunity.  And there's two claims before the Court as I see it

17   from Mr. Alaniz.  False arrest and excessive force.

18             Now, in one of the replies that Ms. Lewis filed,

19   there's a first amendment issue raised I'm assuming regarding

20   his ability to use his cell phone.  I deal with that in my

21   reply brief.  I'm not going to talk about it here, but I don't

22   think that's really before the Court.  I don't know why it was

23   brought up, but there's no evidence that any --

24             THE COURT:  Nobody ever said you can't, but you --

25             MS. BRADLEY:  No.  No.

```
1              THE COURT:  I never saw that --

2              MS. BRADLEY:  Yeah.

3              THE COURT:  -- in your reply.

4              MS. BRADLEY:  Okay.  So, in the admissions, I know

5    Your Honor --

6              THE COURT:  Let me ask.

7              MS. BRADLEY:  Sure.

8              THE COURT:  Actually I guess it's -- for the record,

9    there is obviously Mr. Alaniz's video and it's got sound.

10             MS. BRADLEY:  Yes.

11             THE COURT:  Mr. Cannon's, Deputy Cannon's does not.

12             MS. BRADLEY:  Does not.

13             THE COURT:  And but for purposes -- I mean, really

14   for purposes of summary judgment, it's what's recorded and

15   heard in Mr. Alaniz's video.  And then when you go into

16   deposition testimony, it's basically confirming that was in the

17   video, right?  We heard all -- everybody heard that, correct?

18   Or my question is, apart from the video, what other evidence do

19   you want me to be considering?

20             MS. BRADLEY:  Well, there's another body-worn camera

21   --

22             THE COURT:  That's true.  Okay.

23             MS. BRADLEY:  -- of Sergeant Ortiz.  And so there's

24   Sergeant Ortiz's body-worn camera and there is sound.  And you

25   see Mr. Alaniz at several points in her --
```

1          THE COURT:  Mm hmm.

2          MS. BRADLEY:  -- body-worn camera.  There's Deputy

3    Cannon's.  He doesn't have sound on his, and then there's Mr.

4    Alaniz's --

5          THE COURT:  Okay.

6          MS. BRADLEY:  -- (indiscernible).

7          THE COURT:  So I've got those.

8          MS. BRADLEY:  So there's three.

9          THE COURT:  Okay.  And I do have all three I know on

10   one of the flash drives.  I think maybe it had also gotten

11   labeled as Cannon, so I thought I had two copies of Cannon's,

12   but that must be Ortiz's, which I did not take a look at.  But

13   that's okay.  I'll look at it later.

14         MS. BRADLEY:  If you don't have it, Your Honor,

15   please let me know.

16         THE COURT:  Okay.

17         MS. BRADLEY:  And please, these are just sort of --

18   as a little footnote here, these body-worn cameras are funky.

19         THE COURT:  Mm hmm.

20         MS. BRADLEY:  Please plug it in and make sure you can

21   get it to work.

22         THE COURT:  Mm hmm.

23         MS. BRADLEY:  Because the -- because it's --

24   sometimes I have had to send them out --

25         THE COURT:  Oh, I see what you're saying.  Okay.

```
 1                MS. BRADLEY:  -- and get them converted --

 2                THE COURT:  Mm hmm.

 3                MS. BRADLEY:  -- to something that's manageable.  So

 4     if you can't get your computer --

 5                THE COURT:  Mm hmm.

 6                MS. BRADLEY:  This is me; you can't get your computer

 7     to do it --

 8                THE COURT:  Mm hmm.

 9                MS. BRADLEY:  -- just let me know.

10                THE COURT:  Okay.

11                MS. BRADLEY:  I'll convert it.  And whatever I

12     convert I'll give Ms. Lewis.

13                THE COURT:  Of course.

14                MS. BRADLEY:  But Ms. Lewis has better --

15                THE COURT:  But it's three.  So --

16                MS. BRADLEY:  Three.

17                THE COURT:  -- Cannon, Ortiz, Alaniz.  Those are the

18     three videos.

19                MS. BRADLEY:  Yes, sir.

20                THE COURT:  Okay.  I think I've got them all.

21                MS. BRADLEY:  Okay.  All right.  So let me start with

22     what I consider the easier part, the false arrest part.

23     Probable cause to make an arrest is a low standard.  Your Honor

24     knows that.  And it's what a reasonable person's belief that an

25     offense has been committed, and it's a less-than-preponderance
```

 1   standard.  And that's at Page 8 of my summary judgment

 2   response.  And then I also cite to the Ramirez case at Page 10

 3   that says pulling out of grasp is sufficient for resisting

 4   arrest.

 5            Now, in the admissions, I know you said you wouldn't

 6   deem them, but he -- Mr. Alaniz answered them late, but he did

 7   answer them.  And Number --

 8            THE COURT:  Well, that's different than deemed, so --

 9            MS. BRADLEY:  Yes, sir.

10            THE COURT:  -- I can look at what he answered.  And

11   do I have them as ultimately answered in front of me?

12            MS. BRADLEY:  Yes, you do.  In front of you.

13            THE COURT:  I do.

14            MS. BRADLEY:  I believe so.

15            THE COURT:  I think I should.  I mean --

16            MS. BRADLEY:  Yeah.

17            THE COURT:  Yeah.  Okay.

18            MS. BRADLEY:  Because I -- first, I sent them to you

19   and said please deem them, and then you said no.  But I'm

20   looking at a copy of that --

21            THE COURT:  Okay.

22            MS. BRADLEY:  -- and Number 17 in the deemed

23   admissions admit that she pulled away from Deputy Cannon as he

24   tried to cuff you.  Admit.  Okay.  So to me --

25            THE COURT:  So it's not deemed.

```
 1              MS. BRADLEY:  But --

 2              THE COURT:  As then filed, it was admitted.

 3              MS. BRADLEY:  Admitted.

 4              THE COURT:  Okay.

 5              MS. BRADLEY:  Yes, sir.  And I think in terms of the

 6    false arrest, this was a chaotic day, Your Honor.  And it was

 7    apparently a Houston Police Department that was in charge of

 8    events.  They had constables' offices helping.  They had the

 9    sheriff's office helping.  Mr. Alaniz was put on a bus, taken

10    to be processed.  But in all that chaos, he was never charged -

11    -

12              THE COURT:  Yeah.

13              MS. BRADLEY:  -- and he was let go.  But he was

14    arrested.  We concede that he was cuffed and he was arrested.

15              THE COURT:  Yes.

16              MS. BRADLEY:  But he was never charged with a crime.

17              THE COURT:  No, and you said a case that it's like

18    the question is whether there was probably case to arrest, not

19    whether he was actually then booked or indicted for any

20    offense.

21              MS. BRADLEY:  Yes.

22              THE COURT:  I mean, I saw that authority.

23              MS. BRADLEY:  Okay.  So I think that I've resolved

24    that issue.  I think that that could easily -- not only do I

25    think that you could say that there's no genuine issue of
```

 1    material fact there.  You could also apply qualified immunity.

 2    And I think the false arrest claim should go away.

 3            Now, the excessive force one of course is always the

 4    more complicated one.  And I want to say first that this event

 5    occurred in May of 2020.  So case law after that date is not

 6    precedential.  You can look at it, it can be guiding, but it's

 7    not precedential.  And unpublished cases are not precedential.

 8    And cases from the Fourth Circuit and other circuits are not

 9    precedential.  And there's a lot of that that's been relied

10    upon by Mr. Alaniz.

11            So as particularly the Cobbins opinion from 2023 a

12    year later that Your Honor cites in his motion to dismiss order

13    that just is not precedent.  So to sort of drill down on this,

14    what I took away from your order in the motion to dismiss, Your

15    Honor, was you were troubled by the abruptness of the force

16    where Mr. Alaniz is wrestled to the ground out there in the

17    field.

18            THE COURT:  Well, I will tell you it was -- it's not

19    my concern with the abruptness of the force.  The only thing I

20    was looking at that I could look at on a motion to dismiss was

21    the pleaded facts that it was force quite abruptly applied.

22    That's different than my taking a look at it in the context of

23    a video on summary judgment, right?  I mean --

24            MS. BRADLEY:  Yes.

25            THE COURT:  -- still on the same page.

```
1              MS. BRADLEY:  Yes.  Yes.  We had a -- we did a little
2    -- we had a tussle about whether Your Honor would look at that
3    video, and ultimately Ms. Lewis --
4              THE COURT:  Exactly.
5              MS. BRADLEY:  -- pulled away.  But I -- just in case
6    Your Honor still has that same concern, I understand the
7    difference between a motion to dismiss and a summary judgment.
8    And we're at the point where we're looking at evidence.
9              THE COURT:  No, I know you understand the difference
10   between that.  I'm just saying that as I wrote it up
11   previously, it was based on pleaded facts only.  Your argument
12   now proceeds independently of that.
13             MS. BRADLEY:  Right.
14             THE COURT:  We now have an undisputed factual record
15   --
16             MS. BRADLEY:  Right.
17             THE COURT:  -- and you make your argument on that
18   factual record, which is properly where we are now.
19             MS. BRADLEY:  Yes.  Yes.  We're on the same page,
20   Your Honor.  So I would refer you to my summary judgment, which
21   is Document 98 starting on Page 1.  I go through and set out my
22   facts and the exhibits, and it's quite detailed.  And what I
23   want Your Honor to take away from all of that detail is that
24   this wasn't just an abrupt event.  Mr. Alaniz was told
25   repeatedly to stand back, to get back, to move over to the
```

1    side, to get away from this devolving public event related to

2    the George Floyd tragedy.

3            So when you look at those videos, you see the police

4    officers herding people.  They're saying, "Move, move, move,"

5    and they're trying to keep them off of I-10.  If you read the

6    deposition excerpts, the whole point was they didn't want

7    people down on the freeway because that's how you get hurt.

8    And these people were walking, so they wanted to move them up

9    and away from the freeway.

10           So Mr. Alaniz makes a point of saying, well, I wasn't

11   a protester.  It didn't matter.  They were moving the crowd so

12   no one would get hurt.  So his focus on the fact that he wasn't

13   a protester is really a distinction without a difference.

14           THE COURT:  Mm hmm.

15           MS. BRADLEY:  He was in the crowd, and he needed to

16   move, and he needed to obey the difference officers.  There

17   were no fewer than four different officers.  And I set that out

18   who told him, "You've got to move.  You've got to go."  And

19   Sergeant Ortiz several times, "You've got to go.  You've got to

20   move."

21           And I think what's really important is finally they

22   get to the point where they're saying you have to go and

23   they're in that field where he says he was hurt.  And I quote

24   the deposition testimony.  I'm talking to Mr. Alaniz, and you

25   hear Sergeant Ortiz telling Mr. Alaniz to get on his bike and

 1   move.  And that's on Page 5.

 2              And that says, "Okay.  What did she say to you there,

 3   Mr. Alaniz?

 4              "Answer:  Get on your bike and get across basically.

 5              "Question:  Okay.  All right.  Did you do that?

 6              "A:  To me personally, I'm a distance.  If a cop

 7   tells you to jump, do you do that?  My question to you.

 8              "Question:  Mr. Alaniz, I'm not giving testimony

 9   under oath today.

10              "Got you.

11              "Question:  Sergeant Ortiz told you to move to the

12   other side, correct?

13              "Answer:  Yes.

14              "And you recorded her statement.

15              "Yes.

16              "Did you move?

17              "Eventually.

18              "Did you hear that, Mr. Alaniz?  Are you moving fast?

19   And I said yes.  I heard, "You're not moving fast enough."  Did

20   I hear wrong?

21              "Answer:  I'm moving normal.  I don't understand

22   running.

23              "Question:  My question was -- let me ask my

24   question.  My question was I heard you're not moving fast

25   enough.  Did I hear that correctly?"

1          So the reason I quoted that, Your Honor, is Mr.

2     Alaniz was out there in that difficult situation making his own

3     decisions about what he could and couldn't do despite what the

4     officers were saying, that he had to move.  They weren't trying

5     to keep him from recording.  They wanted to get him and

6     everybody else off to a safe distance, and he argued.

7          And in fact, he admitted to me that it was dangerous,

8     that he knew it was dangerous.  And honestly, Mr. Alaniz has a

9     brain tumor.  And I asked him why were you there in that

10    situation in such fragile health.  And I didn't really feel

11    that I got a good answer from him on that.  So by the time we

12    get to the field --

13          THE COURT:  I thought it was pleaded like before.  I

14    just seem to recall that he likes to be outside and, on his

15    bike, --

16          MS. BRADLEY:  Sure.

17          THE COURT:  -- because of that fact.

18          MS. BRADLEY:  It helps him.

19          THE COURT:  Yeah.

20          MS. BRADLEY:  But -- and Your Honor dismissed the ADA

21    claims --

22          THE COURT:  Yeah.

23          MS. BRADLEY:  -- back a year ago because no one knew

24    he had --

25          THE COURT:  Yeah.

```
 1                MS. BRADLEY:  -- a brain tumor.  You can't look at a

 2      person and see --

 3                THE COURT:  Right.

 4                MS. BRADLEY:  -- they had a brain tumor.  And he

 5      didn't -- that's part of the admissions too.  He didn't tell

 6      anybody he had a brain tumor.  So there was no sort of

 7      communications with the officer that he was someone who had to

 8      be treated differently or handled differently or it was a

 9      delicate health.  There was none of that.

10                So those to me are really, really important facts

11      because Mr. Alaniz knew that they didn't want him there, and

12      they didn't want him there because it was unsafe.

13                THE COURT:  But you had moved onto the excessive

14      force I thought.

15                MS. BRADLEY:  Right.  I'm sorry.  I --

16                THE COURT:  Okay.

17                MS. BRADLEY:  Okay.  So --

18                THE COURT:  Because all of that is also preface to

19      whether it was an unlawful arrest.

20                MS. BRADLEY:  Yes.

21                THE COURT:  But the excessive force I thought was

22      related to did he pull away --

23                MS. BRADLEY:  Right.

24                THE COURT:  -- and then was his arm kept from being

25      fully handcuffed.
```

```
 1              MS. BRADLEY:  Yes.  Okay.  So when you look at
 2    excessive force, you first look at the severity of the crime.
 3    And I can see that this wasn't a severe crime, and that there
 4    has to be an injury, and there was an injury.  He injured his
 5    shoulder.  And the real question is whether the force used was
 6    clearly unreasonable.  And reasonableness to me here is the
 7    touch tone.  To be reasonable is, of course, not to be perfect
 8    in what you do as a police officer.  That's a supreme court
 9    case.
10              And the Cobbins case that Your Honor cited to and is
11    also cited to in the responsive briefs, it's not precedent.  It
12    came out in May 2020, and it's a tasing case.  This is not a
13    tasing case.
14              THE COURT:  Mm hmm.
15              MS. BRADLEY:  Now the Freeman -- in the Freeman case,
16    qualified immunity was applied.  Trammell and Goodson qualified
17    immunity didn't apply, and those are 2017 and 2020.  But the
18    case law -- the facts of those cases were extreme, Your Honor.
19              THE COURT:  Is it the Cobbins case or the Coggins
20    case?
21              MS. BRADLEY:  I want to say Cobbins, C-O-B-B-I --
22              THE COURT:  That's what I've got.
23              MS. BRADLEY:  Yeah.  C-O-B-B-I-N-S.
24              THE COURT:  You keep making the point that that was a
25    tasing case --
```

```
 1              MS. BRADLEY:  The --
 2              THE COURT:  -- which -- no, no, no.  And so I assume
 3     that's correct.  I'm just like looking back at my prior order.
 4     To the extent that I used it, I've quoted something from the
 5     Fifth Circuit.  "Mere failure or refusal to obey an" -- this is
 6     a quote from the Fifth Circuit opinion.  "Mere failure or
 7     refusal to obey an officer's command is passive, not active
 8     resistance."  But that was sort of like just setting up the
 9     legal standard as opposed to then deciding whether what was
10     happening was passive or active resistance.
11              And pulling away is not passive.  Keeping your arm
12     under your body so that you can't be fully secured is not
13     passive, that's active, right?  I mean, that's --
14              MS. BRADLEY:  Yes.
15              THE COURT:  And that's --
16              MS. BRADLEY:  I agree.
17              THE COURT:  -- your argument.
18              MS. BRADLEY:  I agree.  That's my argument.
19              THE COURT:  And I'm just trying to make sure.  Was
20     there something about Cobbins that I looked at and did that had
21     meaning to the fact that it was a taser case or that I said it
22     was somehow dispositive?  I just don't remember it that way.
23              MS. BRADLEY:  Okay.  Your Honor, you're just --
24     you're making the argument for me, and you're doing such a
25     better job.
```

```
 1                THE COURT:  Well, no, it's -- I'm like making your
 2   argument based on like your -- how you argued it --
 3                MS. BRADLEY:  Okay.
 4                THE COURT:  -- in your response.  That's why I was
 5   confused.  I was like I didn't think that I -- because I went
 6   back and looked.
 7                MS. BRADLEY:  Yeah.
 8                THE COURT:  And I didn't think I had used Cobbins
 9   that way.
10                MS. BRADLEY:  You didn't, Your Honor.
11                THE COURT:  Oh, okay.
12                MS. BRADLEY:  I just -- when I -- I always go back to
13   what judges write in my cases --
14                THE COURT:  Thank you.
15                MS. BRADLEY:  -- because I feel like that's going to
16   color everything moving forward.  So I didn't mean that to
17   confuse you or anything like that.  But I can move on from
18   Cobbins.  One of the cases that I think is really important,
19   plaintiff cites to Hall and Johnson.  That's a Fourth and
20   Second Circuit case.  They don't apply.  And the Johnson case
21   was overturned.  The Jameson case was overruled.
22                THE COURT:  And so we have -- and so then on this
23   excessive force, back to Admission 17 --
24                MS. BRADLEY:  Yes.
25                THE COURT:  -- I didn't deem it admitted, but there
```

1    was an eventual actual admission that admits pulling away.

2           MS. BRADLEY:  Yes.

3           THE COURT:  What is the actual request set Number 17?

4    Just can you read it?

5           MS. BRADLEY:  Request for Admission Number 17, "Admit

6    that you pulled away from Deputy Cannon as he tried to cuff

7    you.  Admit."  Can I approach?

8           THE COURT:  Sure.  Yeah.  Okay.  And so that --

9    okay.

10          MS. BRADLEY:  Now, if you turn the page, Your Honor,

11   and look at the very next one, Mr. Alaniz -- and I think this

12   is improper -- qualifies it and says he was trying to talk to

13   them and he was -- you know, it was talking as passive

14   resistance.  But that's not -- pulling away is active, like you

15   say.  Your arm under your body is active.

16          THE COURT:  Admit that you resisted Deputy Cannon and

17   the other officers who were trying to cuff and assist you in

18   cuffing.  Admit.  And then characterizes it as passive

19   resistance.  But then that's just something that I look at the

20   video and decide --

21          MS. BRADLEY:  Yes.

22          THE COURT:  -- whether it's active or passive under

23   the law --

24          MS. BRADLEY:  Yes.

25          THE COURT:  -- right?

```
 1              MS. BRADLEY:  Yes.  You will see Mr. Alaniz on the

 2   ground, and you will see the feet and the bodies of several

 3   other officers around him.

 4              THE COURT:  Mm hmm.

 5              MS. BRADLEY:  It's Deputy Cannon's cuffs, but you see

 6   it takes several people to get him secured.

 7              THE COURT:  Yep.

 8              MS. BRADLEY:  And then it's Cannon that gets him up

 9   and walks him to the bus.

10              THE COURT:  Okay.  All right.  All right.

11              MS. BRADLEY:  And Your Honor, I -- you know --

12              THE COURT:  And your argument is essentially like --

13   is it essentially once you pulled away, some application of

14   force --

15              MS. BRADLEY:  Is reasonable.

16              THE COURT:  -- was permitted?

17              MS. BRADLEY:  Yes.  Yes.

18              THE COURT:  And this didn't exceed --

19              MS. BRADLEY:  And this didn't exceed.

20              THE COURT:  So then --

21              MS. BRADLEY:  And there's a great case that I cite in

22   my reply, which is at 108.  The Hogan v. Cunningham case on

23   Page 6.  That's Docket Entry 108.

24              THE COURT:  Oh, of your reply.

25              MS. BRADLEY:  Yeah.  Plaintiff actually relies on
```

```
 1   Hogan v. Cunningham, and I think it actually supports Deputy

 2   Cannon.  And the paragraph I quote says, "A reasonable officer

 3   was also entitled to consider that tackling a suspect was not

 4   necessarily likely to result in broken ribs or similar

 5   injuries.  Under these circumstances, no reasonable jury

 6   could've concluded that the officers used excessive force to

 7   subdue Hogan."

 8            So in this particular case, they wrestled Mr. Alaniz

 9   to the ground and he injured his shoulder.  And the medical

10   records are there I think for the Court to look at.  And the

11   second paragraph on Hogan says, "We conclude that Hogan has

12   not" --

13            THE COURT:  But that -- is it that Deputy Cannon --

14   so he wrestled him to the ground.

15            MS. BRADLEY:  Mm hmm.

16            THE COURT:  And is it an important point that no

17   reasonable officer could think that that might injure his

18   shoulder, or is it that doesn't matter whether his shoulder was

19   injured?  The force that was being used was reasonable.

20            MS. BRADLEY:  It's that.  It's a --

21            THE COURT:  I mean, if you're taking somebody to the

22   ground, their shoulder might get injured.

23            MS. BRADLEY:  It might.  You might break a rib.

24   You're going to get bruises.  You're going to get --

25            THE COURT:  But the question is do you have --
```

1        MS. BRADLEY:  Was that reasonable?

2        THE COURT:  -- you know, and I'm interested to hear

3   Ms. Lewis' perspective on this and the video.  But I'm just

4   trying to understand sort of what the points are on the law.

5        MS. BRADLEY:  And I think it's that second paragraph

6   that I quote on Page 6.  It says, "We conclude that Hogan has

7   not met his burden to show that the existing precedent at the

8   time of his arrest placed beyond debate the question of whether

9   the use of force amounted to a constitutional violation."

10  Because the cases on which Hogan cites are distinguishable from

11  the circumstances here.

12       And I do have sort of a laundry list of the cases

13  that Alaniz relies on.  For example, the Darden case.  Mr.

14  Darden was choked, punched, kicked, and tased.  He was 340

15  pounds and he couldn't breathe and he died.  You know, that's a

16  different kind of case.  In the Newman v. Guedry case that is

17  cited, Mr. Guedry was tased 16 times and hit with a night stick

18  13 times during an August 2007 traffic stop.

19       And finally, in the Tucker/City of Shreveport case,

20  the Fifth Circuit found the lower court erred in not granting

21  summary judgment based on qualified immunity related to a

22  takedown like this case.  And I quote, "Given these

23  uncertainties and Tucker's superior height, weight, and

24  particularly relative to McIntire, who apparently participated

25  in the officer's efforts to get Tucker to the ground, we are

1    convinced that the district court erred in its qualified

2    immunity of assessing that the takedown aspects of Tucker's

3    claim.  Specifically, we are not convinced that the applicable

4    jurisprudence provided fair warning to the officers in November

5    of 2016 that pulling him to the ground under those

6    circumstances and in the manner that occurred here violated his

7    Fourth Amendment rights against unreasonable seizure.  Rather"

8    --

9              THE COURT:  Okay.

10             MS. BRADLEY:  "he had been concerned of Tucker's

11   favor for summary judgment purposes the foregoing facts and

12   circumstances when viewed in their entirety created a scenario

13   sufficiently tense, uncertain, and rapidly evolving to place

14   the officers' takedown of Tucker, even if mistaken within the

15   protected hazy border between acceptable force and excessive

16   force."  And that's the Tucker case.  So that's where we are,

17   Your Honor.  It's whether that takedown was reasonable, and

18   even though his shoulder was injured, we would argue that that

19   portion's reasonable.

20             THE COURT:  Okay.  Hold on one second.  So as against

21   Deputy Cannon, left against him are simply -- well, solely

22   claims for false arrest and excessive force.

23             MS. BRADLEY:  Yes.

24             THE COURT:  As --

25             MS. BRADLEY:  As I understand it.

```
 1                    THE COURT:  As characterized, those are the claims.

 2                    MS. BRADLEY:  Yes.

 3                    THE COURT:  All right.  And you've addressed both of

 4      those.

 5                    MS. BRADLEY:  Yes.

 6                    THE COURT:  Okay.  All right.  Anything else?

 7                    MS. BRADLEY:  No.  I'm done.

 8                    THE COURT:  All right.  Let me -- Ms. Lewis, let's go

 9      with that, your response just on Deputy Cannon right now.

10                    MS. LEWIS:  Yes, Your Honor.  And may it please the

11      Court.  I do want to point the Court first to the fact that the

12      Docket Entry Number 12, the amended complaint, the live

13      complaint, I believe is a -- well --

14                    THE COURT:  I think there may be -- I think there's

15      one after that.

16                    MS. LEWIS:  There is.  I'm sorry.

17                    THE COURT:  Yeah.

18                    MS. LEWIS:  But since Docket Entry Number 12 and

19      following, the First Amendment claims have been alleged in the

20      complaint and have always been alleged.  They have never been

21      abandoned, and there is not summary judgment, any type of

22      summary judgment request for those particular claims.  I just

23      want to -- and I should've -- I'm sorry.  I --

24                    THE COURT:  No, it's okay.

25                    MS. LEWIS:  I should give --
```

```
 1              THE COURT:  The second amended complaint --
 2              MS. LEWIS:  The live complaint, I'll say.
 3              THE COURT:  -- is Docket 39?  Is that right?
 4              MS. LEWIS:  Had it pulled up here.
 5              THE COURT:  It hasn't been amended since my prior
 6    order, correct?
 7              MS. LEWIS:  That is correct.
 8              THE COURT:  So I'm just looking back at the procedure
 9    --
10              MS. LEWIS:  Okay.  Here we go.
11              THE COURT:  -- section there.
12              MS. BRADLEY:  And Your Honor, not to introduce on Ms.
13    --
14              MS. LEWIS:  39.
15              MS. BRADLEY:  -- Lewis' time, but I did address it.
16    She believes First Amendment is still active.  I addressed it
17    in my reply, the First Amendment issue.
18              THE COURT:  And then you filed a second amended
19    complaint, Docket 39, and then that's it.  So, Jennelle, can
20    you print me Docket 39?  Okay.  Go ahead, Ms. Lewis.
21              MS. LEWIS:  Yes, Your Honor.  Thank you.  So I just
22    wanted to point out it was not -- there was no movement under
23    summary judgment for that -- the First Amendment claims.
24              THE COURT:  Okay.
25              MS. LEWIS:  Going onto the claims that are before us
```

```
 1    in the summary judgment as it relates to the false arrest
 2    claims, I want to point out that in the response and in the --
 3    we've indicated the deposition of Deputy Cannon, he admits
 4    under oath that he didn't even -- he wasn't even arresting Mr.
 5    Alaniz.  He backpedals on everything that his attorney has said
 6    throughout this case.  And you know, in all the pleading, he
 7    goes in his deposition and actually states, "I wasn't arresting
 8    him.  I didn't arrest him, in fact."  And --
 9              THE COURT:  What does he say again?  I mean, he
10    handcuffed him.
11              MS. LEWIS:  Right.  Well, Mr. Alaniz believed he was
12    arrested, so it still would fall under a false arrest.  But Mr.
13    -- excuse me, Deputy Cannon would -- he has now saying that
14    there is no arrest.  Let me get that for you, that citation in
15    our response to the deposition.
16              THE COURT:  Mm hmm.  Because -- okay.  I see.
17              MS. LEWIS:  And so while looking for that, I'll just
18    go to my point of bringing that up.  When we talk about the
19    need of force -- excuse me.  When we're talking about the
20    excessiveness of the force, we have to weigh the need for
21    force.  And with Deputy Cannon admitting that he was not
22    arresting Mr. Alaniz, that peels us back to a place where there
23    was no need for force at all.
24              THE COURT:  I don't think that that necessarily
25    follows.  It would depend on what his explanation for what it
```

```
 1    was, but it's like he's handcuffing somebody, moving him, and

 2    it's crowd control, and we've told you that.  And we don't want

 3    people behind us.  We don't want people surrounding us.  And

 4    they're doing that as a protective measure.  I would think that

 5    that's permissible.  I don't think the lynchpin is whether he

 6    was saying in that instance he was arresting him for X, Y, and

 7    Z.  He was clearly doing crowd control type stuff.

 8              MS. LEWIS:  Well --

 9              THE COURT:  At a minimum.

10              MS. LEWIS:  Well, Your Honor, I think -- I don't

11    believe that is the case when it comes to Mr. Alaniz.  I

12    believe that because Mr. Alaniz was not in a crowd.  Mr. Alaniz

13    was never in the crowd.  So --

14              THE COURT:  It all -- I've looked at the video.  And

15    I'm not saying that you're trying to misrepresent it.  I'm

16    saying that it's -- it depends on where you're drawing the

17    boundaries of what the crowd is --

18              MS. LEWIS:  Yes.

19              THE COURT:  -- and how far away from that you are.

20    He is within -- I mean, I watched -- I have his bodycam video

21    of him videoing the crowd.

22              MS. LEWIS:  Yes.

23              THE COURT:  Now, admitted, you know, he's not like

24    walking shoulder to shoulder with anybody, but he's part of

25    that group and gathering.  Even when -- in the sense of he's
```

1   there.  And that's what the video shows.  So -- but I think

2   it's undisputed, or at least for purpose of summary judgment I

3   think it's established that he's not a protester.  You've made

4   that point, and I think that that's accurate.  But he's there

5   that day in the midst of everything that's going on.  And

6   there's things happening in front of him.  There's also things

7   happening behind him.  There's things happening all around him.

8   So it's hard to say where do I draw the boundary around these

9   hundreds of people that are there that day.

10          MS. LEWIS:  Yes.

11          THE COURT:  That's the problem that I have.

12          MS. LEWIS:  Well, I can help with that a little bit,

13   I hope.

14          THE COURT:  Sure.

15          MS. LEWIS:  So I think -- well, first, it's -- I'm

16   not saying that you're -- which -- I don't know how much you've

17   watched this video.  I'm sure it's not as much as I have

18   because I've had to look at --

19          THE COURT:  I'm sure.  I know to a fact that it is

20   not.

21          MS. LEWIS:  Yes.  I would suspect you have much

22   better things to do than to watch the video like that.  But

23   with that being said, Your Honor, I was able to depose Deputy

24   Cannon on the danger that Mr. Alaniz was in and the crowd

25   around Mr. Alaniz on the side and to the -- and Deputy Cannon

1    admitted there was no crowd behind Mr. Alaniz.  And where Mr.

2    Alaniz was standing -- and I just want to back up a little bit

3    before I go too far there.

4         There was a representation before the Court that Mr.

5    Alaniz was told to move, to move again, and to move again.  No

6    crime.  Those are not crimes.  But even though he was told to

7    move, move, and move again, he moved, moved, and moved again.

8    He moved from one spot to another to another.  He got to a

9    point where he placed himself away in a field just himself and

10   maybe another individual --

11        THE COURT:  Another guy.

12        MS. LEWIS:  Yeah, that was about maybe 10 feet away

13   from him.  He was probably 10 feet away from him, and that is

14   it.  There was nothing but shrubbery behind him.  There's no

15   officers behind him.  He was not behind any officers.  He's

16   secluded in that area next to that individual.

17        Now that is where he's recording and he's standing

18   back.  With that, still no crime has occurred.  No crime.

19   Deputy Cannon says to Mr. Alaniz you need to move again, and

20   Mr. Alaniz is talking back.  I guess you want to -- if you --

21   we can concede that he was engaged in dialogue that was not in,

22   you know, in agreement.  But, excuse me, Deputy Allen -- Deputy

23   Cannon, he actually admits in his deposition that Mr. Alaniz

24   did move.

25        THE COURT:  Yes.

1              MS. LEWIS:  And I --

2              THE COURT:  The video shows that he was moving.

3              MS. LEWIS:  Yes.  And so that's an undisputed fact

4    that he was in fact moving.  And it was only -- and those other

5    moves, again, no crimes and no officers arrest him.  So we're

6    not suing for those, you know, a lawful arrest for those times

7    we said to move.  It's this particular action.  And so -- and

8    this is at the time that Mr. Alaniz is actually moving.

9              Now he's moving, and Deputy Cannon admitted in his

10   deposition that the reason why he tackled Mr. Alaniz to the

11   ground and used the force that he did was because Mr. Alaniz --

12   it wasn't be he was moving, it was because he didn't get on his

13   bike and move.  That is his testimony in his deposition.  That

14   is the reason why he detained Mr. Alaniz.

15             THE COURT:  Mm hmm.

16             MS. LEWIS:  And so that is, again, no crime because

17   he didn't get on his bike.  He said I see him moving, and yes,

18   indeed is moving, and that's not why I arrested him.  It's

19   because he didn't -- I said -- I asked is it because he didn't

20   get on his bike and move?  Is that the reason?  He said yes.

21             THE COURT:  Mm hmm.

22             MS. LEWIS:  So again, we're --

23             THE COURT:  That's in part with I think the -- is it

24   in the video?  Was there the dialogue about you're not moving

25   fast enough?  Was that said, or is that just part of the

1    argument?

2             MS. LEWIS:  I believe both.

3             THE COURT:  Yeah.

4             MS. LEWIS:  I believe it's both.  And that goes back

5    to, you know, we talked about the fact that, you know, he has

6    this disability.  And you know, we're not -- we respect the

7    Court's opinion on the ADA claim being dismissed.  And

8    obviously we didn't have evidence to show -- we couldn't

9    present evidence.

10            And I know it was perplexing in the beginning of the

11   lawsuit when I didn't want the video to be shown.  It wasn't

12   that I didn't want the video shown.  I didn't want to convert

13   it to a summary judgment by attaching.  That's all.  And I've

14   been caught in that place.  I kind of learned from the bumps on

15   the head.

16            THE COURT:  We had a full dialogue about it.

17            MS. LEWIS:  Yes.

18            THE COURT:  I had a problem with not --

19            MS. LEWIS:  Yes.  That's the only reason.

20            THE COURT:  -- looking at it subject to my saying I

21   am going to look at it someday.

22            MS. LEWIS:  Yes.  Absolutely.

23            THE COURT:  So I was saying let's be careful about --

24            MS. LEWIS:  And I felt good about it.

25            THE COURT:  Yeah.

1              MS. LEWIS:  I felt good that when you watched it --

2              THE COURT:  And that's what you said that day as

3    well.

4              MS. LEWIS:  Okay.

5              THE COURT:  Okay.

6              MS. LEWIS:  All right.  So yeah.  So with that,

7    Deputy Cannon actually -- I believe that was -- that's -- well,

8    that's in his deposition.  And he also goes on to admit that

9    Mr. Alaniz was not standing behind him either in his

10   deposition.  These are -- end up being undisputed facts here,

11   but the material fact is, you know, if you weigh the -- was the

12   force reasonable, I think the force is not reasonable if he

13   admits that I was -- he wasn't a committing a crime, if the

14   officer admits that he was never -- he wasn't arrested.  Hea

15   admits that.

16             So you -- the -- let me see.  And the representation

17   as it relates to his arm being underneath him and that being

18   active resistance, he was -- his arm was underneath him, but he

19   wasn't holding it away from Deputy Cannon.  There's no facts to

20   support that.  No -- that wasn't -- that did not come out in

21   any deposition.  Cannon never said he was holding arm against

22   me, I was trying -- you know, underneath his body and I was

23   trying to get it from underneath him and he wouldn't.

24             That is not testimony.  That has not come out.  And

25   if they say that later at trial, you know, maybe that is.  But

```
 1   that is -- that would be a disputed issue if Mr. Alaniz says,

 2   no, that's not what I was doing.  I landed on top of my arm,

 3   and that's why my arm was underneath me.  And nobody said give

 4   me your arm.  You know, so I think --

 5             THE COURT:  I'll take a look at the record on that.

 6             MS. LEWIS:  Okay.  Thank you.  And so that was --

 7   those are the main issues that I want to address as far as the

 8   false arrest is concerned.  So Deputy Cannon admits I wasn't --

 9   I didn't arrest him.  But the case law -- and it's clear that

10   if a person feels as though they're -- that they're not free to

11   leave, that they -- that it is a Fourth Amendment seizure to

12   support a false arrest in the Fifth Circuit and the United

13   States Supreme Court.

14             So that false arrest claim I think is probably

15   something that I should've filed summary judgment on to be

16   honest.

17             THE COURT:  For what?

18             MS. LEWIS:  On the false arrest based on Mr. --

19   excuse me, Deputy Cannon's representation.  And I can go into

20   -- I already know you know the facts as it relates to after he

21   was taken and put on the bus, the detainee bus.

22             THE COURT:  Mm hmm.

23             MS. LEWIS:  And there was no charges and he was

24   released, and so on and so forth.  Everything that has been set

25   forth by Defendant Cannon's counsel is -- has -- supports no
```

1    probable cause for any crime.  We never heard that at all in

2    any of these pleadings, in any of the arguments, and nothing at

3    all.  So the false arrest I think it is pretty solid as it

4    relates to that.

5              Now, when we get to the excessiveness of the force,

6    again, we weigh the need.  The need for force is based on the

7    arrest.  And that need for him to be tackled because he did not

8    get on his bike.  That's his admission.  That's the reason why

9    I arrested him because he didn't -- that need -- that was an

10   unnecessary need for force if that is true.  Now, he can -- he

11   may say something different at trial.  You know, I changed my

12   mine.  I want to expand or I meant to say something different.

13   He hasn't said it at this point.

14             THE COURT:  So does your excessive force argument

15   depend on me agreeing with your false arrest argument --

16             MS. LEWIS:  No.

17             THE COURT:  -- as in I would agree that since he was

18   not formally booked or arrested that day, there's -- you then

19   have a valid false arrest claim and therefore there should've

20   been application of no force?  Or I mean, I think that the

21   argument that's been made is that like once there was an

22   attempt to cuff him, he pulled his arm away.

23             MS. LEWIS:  Mm hmm.

24             THE COURT:  So that's going to result in some force.

25   And then there was also the arm under the body, which also is

```
 1   going to require some force.  What do you have to say about

 2   that assuming I get to those parts, the type of force?  I mean,

 3   we're not seeing beating with night sticks.  We're not seeing

 4   tasers.  We're not seeing pepper spray.  We're not seeing

 5   anything like that.  We're seeing an application of force to

 6   get the handcuffs off.

 7             MS. LEWIS:  Right.  So that is not where his injury

 8   came from.

 9             THE COURT:  Mm hmm.

10             MS. LEWIS:  If --

11             THE COURT:  The injury came from what?

12             MS. LEWIS:  It came from after he was -- after --

13   when he tackled to the ground --

14             THE COURT:  Mm hmm.

15             MS. LEWIS:  Well, there was injury there.  I'll say

16   that, but that wasn't the only injuries I will say.  The --

17   after he was cuffed with his -- with the braces behind his

18   back, you can see -- well, Mr. Alaniz testifies and you can see

19   kind of in the video where his arms are raised up --

20             THE COURT:  Mm hmm.

21             MS. LEWIS:  -- to a level where that caused further

22   shoulder injury to him.  So that was also a part of the

23   unnecessary need for force.

24             THE COURT:  Okay.

25             MS. LEWIS:  He didn't have to do that.
```

```
1              THE COURT:  Okay.

2              MS. LEWIS:  So I believe that's in Mr. Alaniz's

3    declaration where he makes that assertion.

4              THE COURT:  Okay.

5              MS. LEWIS:  So I just want to make sure those -- that

6    there is -- there were different types of injuries that were --

7    that occurred here.  But again, I want to clarify the arrest.

8    There's not an arrest solely on the fact that he was not booked

9    and that -- but the fact that there was no crime.  We have not

10   heard a crime articulated yet.  They have not stated any crime.

11   So that --

12             THE COURT:  I thought it was resisting arrest.

13             MS. LEWIS:  No.  For prior to the alleged --

14             THE COURT:  Oh, I mean, he said no, but it's like

15   that's what's in the briefing and that's what opposing counsel

16   has argued is that it's like resisting arrest because he pulled

17   away.

18             MS. LEWIS:  Right, but that -- well, what I mean is

19   prior to that.

20             THE COURT:  Okay.  But then I --

21             MS. LEWIS:  There's no probable cause --

22             THE COURT:  Yeah, I understand that.

23             MS. LEWIS:  Okay.  I'm sorry.  Yes.

24             THE COURT:  No, I get it.

25             MS. LEWIS:  And -- but again, Mr. -- there was no
```

 1    resisting arrest because Cannon admitted there was no arrest.

 2    He wasn't trying to -- that was his admission.  It's only his

 3    counsel now that's trying to say -- to find something to

 4    conjure up -- to say this -- you know, this is a crime that he

 5    -- you know, but Cannon has a subjective knowledge as to

 6    whether he believed Mr. Alaniz was resisting, and he didn't.

 7            THE COURT:  Mm hmm.

 8            MS. LEWIS:  He never said Mr. Alaniz was arrested.

 9    It was only for -- that would be for him to say whether he felt

10    that the defendant was -- I'm calling Mr. Alaniz the defendant

11    because at that point he would've been considered the defendant

12    -- would be resisting.  And Cannon never said that.

13            Now, had he said that, that would be a different

14    story.  But he didn't.  And so that -- so again, we don't have

15    a crime articulated here whatsoever leading up to the arrest or

16    even the Monday morning quarterback saying, oh, this could've

17    been, this could've been, you know, a crime or that could've

18    been a crime.  The resisting is not a crime because it was

19    never anything that anybody stated on the scene afterwards or

20    even Cannon said himself.  He --

21            THE COURT:  You --

22            MS. LEWIS:  -- obviously didn't feel that Mr. Alaniz

23    was resisting.

24            THE COURT:  Okay.

25            MS. LEWIS:  And without that, I don't think we can

```
 1   make that leap without that testimony.  If we were in -- on the
 2   criminal side of court and that's a case that would not go
 3   forward because you would need that officer to say he was
 4   resisting, and that never happened here.
 5               THE COURT:  Okay.
 6               MS. LEWIS:  Okay.
 7               THE COURT:  All right.
 8               MS. LEWIS:  And so those are the main points as far
 9   as, you know, the -- I think they kind of go together, but if
10   we segregate the two, the false arrest and the excessive force,
11   I think they both can also stand alone.
12               THE COURT:  Mm hmm.
13               MS. LEWIS:  But I think coupled together that it
14   makes it even stronger.
15               THE COURT:  Okay.
16               MS. LEWIS:  A stronger case for both.
17               THE COURT:  Okay.  All right.
18               MS. LEWIS:  Yes --
19               THE COURT:  Not as to the county yet.  He's --
20               MS. LEWIS:  Okay.
21               THE COURT:  -- yet to argue.  I'm going to give -- I
22   want to hear a reply on this.  I want to finish --
23               MS. LEWIS:  Sounds good.  Okay.
24               THE COURT:  -- this part of the argument.
25               MS. LEWIS:  Thank you.
```

1           THE COURT:  Okay.  Thank you.

2           MS. BRADLEY:  A reply from me, Your Honor?

3           THE COURT:  Yes.

4           MS. BRADLEY:  Okay.  So Your Honor, just quickly, I'm

5  going to refer you back to my brief at Document 98.  It's

6  touching on probable cause.  I say that -- well, I say --

7           THE COURT:  At what page?

8           MS. BRADLEY:  Page 9 --

9           THE COURT:  Okay.

10          MS. BRADLEY:  -- Docket Entry 98.  At Paragraph 26 I

11  say, "Alaniz was not ultimately charged with any crime but

12  released by Houston Police."  And Ms. Lewis talks about Deputy

13  Cannon saying, well, I didn't arrest him.  I think what Mr. --

14  Dr. -- Deputy Cannon was trying to say was I didn't book him.

15  I cuffed him and I put him on the bus.  So arrest, you know,

16  it's mushier term for him, unfortunately.

17          But we're not disputing that he cuffed him.  We're

18  not disputing that.  He cuffed him and he put him on the bus.

19  So he was seized in terms of the Fourth Amendment.  But we

20  don't believe he violated any Fourth Amendment rights.  And he

21  admitted that he resisted, so there's no material fact to

22  support -- thus, there is no material fact to support a false

23  arrest claim.

24          Now, at Paragraph 28, Deputy Cannon also had probable

25  cause to detain Alaniz for resisting and disobeying a

 1   reasonable order to move.  The Fifth Circuit has repeatedly

 2   made clear that a claim for false arrest must fail if the

 3   officer had probable cause to arrest for any charge, not all

 4   charges.  That's the Deville case, Your Honor.  So this idea

 5   that they're -- that Deputy Cannon didn't articulate the

 6   specific thing that he was cuffing Mr. Alaniz for is a rabbit

 7   trail, Your Honor.

 8          In this case, Cannon testifies that he used the

 9   minimum amount of force needed to cuff Alaniz and that Alaniz

10   resisted.  And at Paragraph 30 I say a reasonable officer

11   could've believed that Alaniz resisted detention.  Pulling out

12   of an officer's grasp is sufficient to constitute resisting

13   arrest.  So and then just briefly, Your Honor, unless you want

14   something else --

15          THE COURT:  Well, when he's grabbing him at that

16   point.  So it's resisting arrest.

17          MS. BRADLEY:  Mm hmm.

18          THE COURT:  So what's the -- what's he doing there?

19   He's not -- is he arresting him at that point like when he

20   grabs him and then he pulls away?

21          MS. BRADLEY:  Yeah.  I think he is, Your Honor.  I

22   don't think that there's -- you know, you can cuff somebody,

23   and after a certain period of time that cuffing -- for example,

24   if you cuff somebody and sit them in the car or cuff them and

25   sit them on the curb.  After a certain period of time it

1    becomes an arrest.

2              THE COURT:  Mm hmm.

3              MS. BRADLEY:  It sort of morphs into it.  I think

4    we're arguing about, you know, apples and oranges here.  It

5    doesn't really matter that Cannon maybe used the term "arrest"

6    incorrectly.  He cuffed him.  This is a Fourth Amendment claim.

7    We're there.  He was seized.  Deputy Cannon seized Mr. Alaniz.

8    The question is whether that was reasonable and whether there

9    was excessive force, and we're saying there was not.

10             THE COURT:  Okay.

11             MS. BRADLEY:  And in addition, I briefed it, Your

12   Honor, that disobeying an order is also a crime.  So that this

13   saying that I haven't articulated something is just -- it's

14   just not true.  And then the First Amendment, Your Honor, the

15   second amended petition, I pulled it out.  But Ms. Lewis talks

16   about the First Amendment on Page 1 of Docket Entry 39.  And

17   then when she goes back into the meat of her --

18             THE COURT:  It says on Page 1, Paragraph 1 --

19             MS. BRADLEY:  Right.

20             THE COURT:  -- it references Title 42, Sections 1983,

21   1985, 1988, as well as the First, Fourth, and Fourteenth

22   Amendments.

23             MS. BRADLEY:  Right.  And so --

24             THE COURT:  And then for the cause of action title,

25   just in advance of Paragraph 76, it again references First,

1   Fourth, and Fourteenth Amendments.

2          MS. BRADLEY:  So --

3          THE COURT:  I see then in Paragraphs 77 and 78

4   factual allegations of things that happened that constituted

5   violations of the Fourth and Fourteenth Amendments, but I don't

6   see any factual -- anything factual said about the First

7   Amendment.

8          MS. BRADLEY:  And I think if Your Honor still has my

9   admissions up there --

10         THE COURT:  Yeah, I do.

11         MS. BRADLEY:  -- I think -- if I could have those

12  back, I think Mr. Alaniz says no one told him he couldn't

13  video.  And in fact, I quote, there's -- if you go back and

14  listen to the video --

15         THE COURT:  Well, you have that in your -- I think

16  that's in both your motion and your --

17         MS. BRADLEY:  Right.

18         THE COURT:  -- that's in your reply.  I don't know.

19  Maybe I should look.

20         MS. BRADLEY:  Yeah.  You hear a guy say, "I'm happy

21  here.  You can video.  You've just got to move."  Request for

22  admission Number 4, admit that your cell phone video of May 29,

23  2020 does not show you telling an -- oh, that's -- I'm sorry.

24  That's the wrong one.

25         THE COURT:  Okay.

```
1              MS. BRADLEY:  I think --

2              THE COURT:  Well, you specify in Paragraph 9 of your

3    reply --

4              MS. BRADLEY:  Yeah.

5              THE COURT:  -- what your factual argument is about

6    the First Amendment.  So I've got that.

7              MS. BRADLEY:  And then in request for admission

8    Number 21...

9              THE COURT:  Says what?

10             MS. BRADLEY:  No, I guess I thought I had it in here,

11   but I don't, Your Honor.

12             THE COURT:  Okay.  Can I see that again?

13             MS. BRADLEY:  Yes.  If you listen to the -- if you go

14   back to my Docket Entry 98 at my fact --

15             THE COURT:  Does this --

16             MS. BRADLEY:  -- you'll --

17             THE COURT:  Does this one have a docket or are these

18   requests for admissions?  Do I have an --

19             MS. BRADLEY:  Attached.  When I -- the -- my motion

20   to deem them, you'll see them there.  I can get that docket

21   entry for you, Your Honor.  I just don't have it with me.

22             THE COURT:  Okay.

23             MS. BRADLEY:  But it's part of the -- my motion to --

24             THE COURT:  Well, when you brought the motion to

25   deem, that was just like because there was no response as of
```

1    that time.

2              MS. BRADLEY:  Right.  I think I --

3              THE COURT:  And you're saying count them all as true.

4              MS. BRADLEY:  Say it again?

5              THE COURT:  Your -- the motion to deem admissions was

6    -- my recollection is that request for admissions had been

7    served.  There had been no response to them, so the motion was

8    deem these admitted.

9              MS. BRADLEY:  Yes.

10             THE COURT:  And instead, Ms. Lewis didn't want them

11   deemed admitted, but --

12             MS. BRADLEY:  Filed it.  You know, Your Honor, maybe

13   I didn't file those on the docket.  I am not sure.  I have to

14   go back and look.  Her ultimate responses, I have to go back

15   and look on the docket entry.

16             THE COURT:  Okay.

17             MS. BRADLEY:  But I'll off them right now, Your

18   Honor.  They're signed at the back.

19             MS. LEWIS:  I would object to that since there has

20   already been a ruling on the motion.  There's no --

21             THE COURT:  Well, no, no, no.  A --

22             MS. BRADLEY:  That's not the point.

23             THE COURT:  -- deemed admission is that this is just

24   simply --

25             MS. LEWIS:  To supplement the summary judgment.

```
 1              THE COURT:  No, no, no.  A deemed admission is in the
 2    course of discovery I served a request for admission on my
 3    opponent.  They never responded, therefore it's deemed to be
 4    admitted.
 5              MS. LEWIS:  I understand.
 6              THE COURT:  Okay.
 7              MS. LEWIS:  I -- yes.
 8              THE COURT:  And it said -- I'm -- and so my question
 9    is I have what's here, certificate of service with your
10    signature August 1, 2024.  These are the responses to the
11    requests for admissions, correct?
12              MS. LEWIS:  Correct, yes.
13              THE COURT:  Okay.
14              MS. LEWIS:  But to enter them into the record at this
15    point, what would -- what's the vehicle that they're -- she
16    using it for to supplement the summary judgment?  What is the
17    point that she's having you to review this in the record is
18    what I'm getting to.
19              THE COURT:  I think it's all -- well, I'll tell you.
20    So is your point you've admitted factually some things, but now
21    you don't want me to look at it for purposes of summary
22    judgment?  Because this is true.  What's in this document is
23    true or there's bigger problems with this document.  But the
24    admissions in this document are true, correct?
25              MS. LEWIS:  I understand, Your Honor.  And my guess
```

```
 1    in the --

 2                THE COURT:  And they're referred to throughout the

 3    summary judgment briefing in terms of me having deemed them

 4    true as in there was no response that they're admitted.  But my

 5    point has been -- my point and my order was I would rather do

 6    it on actual evidence.  And it is actual evidence if there is a

 7    request for admission that says admit.

 8                MS. BRADLEY:  And Your Honor, it is.  It is --

 9                THE COURT:  It doesn't mean that some of these --

10                MS. BRADLEY:  I attached it.

11                THE COURT:  -- things are preclusive, but it's just

12    -- an admitted request for admission is supposed to be

13    something that takes it out of a material dispute of fact.

14                MS. LEWIS:  Right.  Yes, Your Honor.  I guess what

15    I'm trying to understand is right now we have a record before

16    the Court that those admissions are not in the record.

17                MS. BRADLEY:  I don't think so.  I misspoke.  I think

18    it's Exhibit 4.  It's on Page 98 of my summary judgment

19    response, Exhibit 4.

20                THE COURT:  Oh.

21                MS. LEWIS:  Okay.  Yeah.

22                THE COURT:  So Docket 98.

23                MS. BRADLEY:  It says Docket 98 --

24                THE COURT:  Hold on.  Let me --

25                MS. BRADLEY:  -- Exhibit 4.
```

```
 1              THE COURT:  -- catch up with you.  I've got --

 2              MS. BRADLEY:  And if I'm wrong, tell me.

 3              THE COURT:  That's what I thought was that these were

 4    before me not in terms of a motion to deem admission, but that

 5    -- then we actually had requests for admissions that had been

 6    actually responded to.

 7              MS. BRADLEY:  Yes.

 8              THE COURT:  So let me see.

 9              MS. BRADLEY:  It's my Exhibit 4, Your Honor.

10              THE COURT:  Yes.

11              MS. BRADLEY:  Docket Entry 98.

12              THE COURT:  And where are they first referred to?

13    Like there's not a list of evidence upfront.

14              MS. BRADLEY:  No.  I think Page 10, Paragraph 90 --

15    29.  Because I say, "And Alaniz" --

16              THE COURT:  Okay.  Yes.

17              MS. BRADLEY:  -- "admits he pulled away."  So those

18    --

19              THE COURT:  So it is already in as Exhibit --

20              MS. BRADLEY:  Yes.

21              THE COURT:  -- 4.

22              MS. BRADLEY:  Yes.

23              MS. LEWIS:  I don't know if it is.

24              THE COURT:  Now can you look at Docket 98?  I guess

25    it would be Attachment 4.
```

```
 1                MS. LEWIS:  I'm looking at it.

 2                THE COURT:  Will you print that for me?  And then if

 3      it's submitted there, then all of this discussion is beside the

 4      point.

 5                MS. LEWIS:  Is moot, yeah.  And I'm not -- I just

 6      want to -- I only --

 7                MS. BRADLEY:  I understand.  You want...

 8                MS. LEWIS:  Yeah, I just want to understand what is

 9      the -- like what vehicle is she using to add this to the record

10      at this point?  But if it's already in the record --

11                THE COURT:  I don't think that she is.

12                MS. LEWIS:  Yeah.

13                THE COURT:  That's the thing.

14                MS. BRADLEY:  Yeah.

15                THE COURT:  I've been on the -- I knew that there

16      were -- I think as I just sort of said, I thought I was

17      proceeding on the basis of requests for admissions that had

18      actually been responded to as opposed to me request for

19      admissions that had not been responded to, but I would just

20      deem them to be admitted.  And I had overruled that.  I denied

21      that.

22                MS. LEWIS:  Yes.

23                THE COURT:  But I do think that they are part of the

24      record.

25                MS. LEWIS:  Right.  And --
```

```
1            THE COURT:  There's a printer printing, so we're
2   about to find out.
3            MS. BRADLEY:  Yeah, and, Your Honor, just to shift
4   gears a little bit, in terms of the First Amendment issue
5   replied to in my reply portion, there's no facts that allege at
6   any point in the second amended complaint that somebody told
7   Mr. Alaniz or told -- told him or prevented him from videoing.
8            THE COURT:  I understand.  I mean, so the first --
9            MS. BRADLEY:  Yeah.
10           THE COURT:  I got her argument and I've got your
11   reply about the first amendment, and I'll look at the factual
12   record on that.
13           MS. LEWIS:  Yeah, and I didn't get -- in the sense
14   there's any reply, I didn't get to respond if she is trying to
15   raise it now as a summary judgment issue to bring up all the
16   reasons why.  I should have the opportunity to respond.  But
17   since it's in the reply, you know, it's --
18           THE COURT:  Okay.  All right.  I did not have a
19   motion to sur-reply.  Would you like to put something in on
20   that?
21           MS. LEWIS:  If the Court is going to entertain the
22   argument of -- that there was no First Amendment --
23           THE COURT:  Well, I'm going to entertain it.  I'm
24   also looking at it in terms of, you know, in fairness, like
25   what's in the second amended complaint.  You have said the
```

1    words "First Amendment" --

2              MS. LEWIS:  Yes.

3              THE COURT:  -- at two spots, but I don't see any

4    allegation that --

5              MS. LEWIS:  There --

6              THE COURT:  -- links that up to anything.  You could

7    point me to it if you want to.

8              MS. LEWIS:  Sure.  I can.  It's also included in the

9    summary judgment declaration.  Mr. Alaniz sets forth evidence

10   that is uncontroverted relating to the first amendment claims.

11   Give me just one moment.

12             THE COURT:  Actually, hold on one second.  Let me

13   look at what has just been handed to me.

14             MS. BRADLEY:  And if I could see it too, Your Honor.

15             THE COURT:  Well --

16             MS. BRADLEY:  I don't want to mislead.

17             THE COURT:  -- I'm going to look first.

18             MS. BRADLEY:  All right.

19             THE COURT:  The motion to deem the request for

20   admissions, and it looks like they're the blank --

21             MS. LEWIS:  Mm hmm.

22             THE COURT:  -- admissions and interrogatories,

23   etcetera.  So can you show these to Ms. Bradley?  So that

24   doesn't have the actual --

25             MS. BRADLEY:  (Indiscernible).

```
 1                    THE COURT:  But for purposes of summary judgment, for

 2      instance, what's being relied on, Ms. Lewis --

 3                    MS. LEWIS:  Yes.

 4                    THE COURT:  -- is Paragraph 29 --

 5                    MS. LEWIS:  Okay.

 6                    THE COURT:  -- Docket 98, which is on Page --

 7                    MS. LEWIS:  29A.

 8                    THE COURT:  -- at the bottom indicating Page 10.

 9                    MS. LEWIS:  Okay.

10                    THE COURT:  And Alaniz admits he pulled away, Exhibit

11      4, Admission 17.  In what I look at, at Exhibit 4, it's the

12      blank version with the motion to deem it admitted.  So that's

13      not there.  But for practical purposes, what you then did file

14      was, "Admit that you pulled away from Deputy Cannon as he tried

15      to cuff you.

16                    "Answer:  Admit".

17                    MS. LEWIS:  Yes.

18                    THE COURT:  And without clarification.  So what more

19      is needed from him?

20                    MS. LEWIS:  Well, Your Honor, that -- nothing is more

21      needed.  Him admitting that he pulled away from Mr. -- or

22      excuse me from Deputy Cannon is not a crime.

23                    THE COURT:  No, no. I've still -- so that's the thing

24      though.

25                    MS. LEWIS:  Yes.
```

```
 1              THE COURT:  Well, what -- but then that's getting

 2   then to the legal argument where I thought you were saying --

 3              MS. LEWIS:  I'm sorry.

 4              THE COURT:  -- well, we have a factual basis for

 5   anything like this.  It's like there's the factual contention.

 6   It is undisputed.  Correct me if I'm wrong.

 7              MS. LEWIS:  Okay.

 8              THE COURT:  It is undisputed that Alaniz admits he

 9   pulled away.

10              MS. LEWIS:  Yes.

11              THE COURT:  And then you have your legal arguments

12   that says it wasn't a crime before that, that's not a crime

13   when he did that.  And so our argument as to --

14              MS. LEWIS:  Oh, yeah.

15              THE COURT:  -- unlawful arrest and excessive force

16   are independent of whether he admits he pulled away, correct?

17              MS. LEWIS:  Yes, that is correct.

18              THE COURT:  Okay.  All right.

19              MS. LEWIS:  Yeah.  I didn't -- I'm sorry.  I didn't

20   know where we were going in that.  But yes, the -- and that's

21   part of the reason why the admissions -- you know, the deemed

22   admitted wasn't really that much of an issue.  Because the way

23   that they were fashioned, they didn't cause an admission to a

24   crime.

25              THE COURT:  I used request for admissions or request
```

```
 1   to admit facts.  That's not -- I don't look at any particular

 2   one, and it's not --

 3             MS. LEWIS:  Yes.

 4             THE COURT:  It's not a request to admit that you have

 5   no claim.

 6             MS. LEWIS:  Right.  Absolutely.

 7             THE COURT:  So there's a fact and then there's law to

 8   be argued as to what that fact means.

 9             MS. LEWIS:  Yes.

10             THE COURT:  Okay.  So that is --

11             MS. LEWIS:  Absolutely.

12             THE COURT:  So it is an established fact.  And then

13   there's a dispute legally about what that means.

14             MS. LEWIS:  Right.  Exactly.

15             THE COURT:  Okay.  That's fine.

16             MS. LEWIS:  Exactly.  And I think -- yes.

17             THE COURT:  Okay.

18             MS. LEWIS:  I'll leave it there.  Yes.

19             MS. BRADLEY:  Your Honor, I think I'm done.  Do you

20   have anything else that you need me to clarify?

21             THE COURT:  Let me see.

22             MS. BRADLEY:  Here's the --

23             THE COURT:  What about the arm under the body?  Was

24   it -- what's the record on that?

25             MS. BRADLEY:  You see it.
```

1          THE COURT:  Okay.  And that -- and then what about

2     picking up, like maybe picking him up by his arms --

3          MS. BRADLEY:  Well, (indiscernible) --

4          THE COURT:  -- after the cuff behind him?

5          MS. BRADLEY:  -- (indiscernible) you see them two.

6     And you see him being, you know (indiscernible).

7          THE COURT:  I think Ms. Lewis said that it was like,

8     yeah, he was injured because his arms were then behind --

9     cuffed behind his back and then you picked him up by using

10    those as the means by which to lift all of his body weight up

11    off the ground.

12         MS. BRADLEY:  The evidence in this case is that prior

13    to this event Mr. Alaniz had injured that shoulder before in a

14    bike accident.  And it -- we -- so that shoulder was, I don't

15    know, tender.  That's in the record.  And then when he was

16    wrestled to the ground, that's -- I assume that that's when he

17    got injured is when he fell to the ground, when they wrestled

18    him to the ground.  Being escorted, I don't know that there's

19    any evidence that being escorted is what caused the injury or

20    any testimony that being escorted --

21         THE COURT:  But then Ms. Lewis was -- it's between

22    being wrestled to the ground and being escorted, that he's

23    being picked up by arms that are cuffed behind his back.  Am I

24    going to see that clearly in the video?  Like I can make my own

25    judgment about that or what?

```
 1              MS. BRADLEY:  I think you can.  I don't remember it
 2   clearly myself, but he's -- you -- it's body-worn.  You see him
 3   being walked.  I think it's Cannon's video because --
 4              THE COURT:  Okay.
 5              MS. BRADLEY:  -- that shows it.  Because Deputy Ortiz
 6   went the other way to escort other folks.  So...
 7              THE COURT:  Okay.  Ms. Lewis, on the First Amendment
 8   issue, you want to sur-reply briefly on that?
 9              MS. LEWIS:  You want me to do it orally now?
10              THE COURT:  No.
11              MS. LEWIS:  Oh, okay.  Okay.  Thank you.
12              THE COURT:  No, you said that you hadn't had a chance
13   to --
14              MS. LEWIS:  Yes.  If the Court's going to entertain
15   that --
16              THE COURT:  I am going to entertain it.
17              MS. LEWIS:  -- that issue, sure.  Yes.
18              THE COURT:  Because I think it -- in reply, it's
19   responsive to something you said in your response that maybe
20   wasn't clearly addressed in Docket 98.  But if you would like
21   to say something about what was said about it in the reply, you
22   can do so.  And in the reply, it was -- I mean, it's all of --
23              MS. BRADLEY:  That's Docket --
24              THE COURT:  It's a half page.  It's at Page 2 and 3
25   of Docket 108.  It's a half page on the First Amendment.  Would
```

```
 1  you like three pages --

 2            MS. LEWIS:  Sure.

 3            THE COURT:  -- sur-reply?

 4            MS. LEWIS:  Sure.  That's fine.

 5            THE COURT:  Three pages of sur-reply within ten days.

 6  Is that sufficient?

 7            MS. LEWIS:  It is.

 8            THE COURT:  Fourteen days?  You want a little bit --

 9            MS. LEWIS:  No, ten is fine.

10            MS. BRADLEY:  (Indiscernible).

11            THE COURT:  Huh?

12            MS. LEWIS:  Ten is fine.

13            THE COURT:  Ten is fine.  Okay.

14            MS. BRADLEY:  Do I get a response or no?

15            MS. LEWIS:  You know what, Your Honor?

16            THE COURT:  Hold on.

17            MS. LEWIS:  We will waive the issue.  I'm going to --

18  I feel that we -- I feel that -- strong enough about the other

19  claims that we will waive that First Amendment issue.  I don't

20  think it's as strong as the other claims.

21            THE COURT:  Okay.  So --

22            MS. LEWIS:  I don't think it's going to --

23            THE COURT:  All right.  Okay.  So --

24            MS. LEWIS:  -- if those don't survive.

25            THE COURT:  Well, waive the issue as in to the extent
```

1   that a First Amendment right --

2            MS. LEWIS:  We're going to --

3            THE COURT:  -- has been pleaded, it's been withdrawn.

4            MS. LEWIS:  Yes.

5            MS. BRADLEY:  Okay.

6            THE COURT:  Okay.  I'm not instructing you to do

7   that.

8            MS. LEWIS:  I understand.

9            THE COURT:  I was giving you a chance to brief it

10  further.

11           MS. LEWIS:  I appreciate that.

12           THE COURT:  Just so the record's clear.

13           MS. LEWIS:  Yes.

14           THE COURT:  Okay.  All right.  Okay.  It is withdrawn

15  at the request of plaintiff.  The minute entry will reflect it.

16  Thank you.

17           MS. LEWIS:  Thank you, Your Honor.

18           THE COURT:  All right.  Okay.  Mr. Butts?  To the

19  extent any of this has to do with, well, you haven't shown

20  anything as to Deputy Cannon, therefore you haven't shown it as

21  to the county, I don't need -- I understand it.  I don't need

22  argument on that.

23           MR. BUTT:  Yeah.  Sure.

24           THE COURT:  Just carry onto the independent arguments

25  that you've got.

1          MR. BUTT:  Your Honor, we submit that --

2          THE COURT:  Could I pause for one second?  We do have

3     -- so I do have the request for admissions here that were

4     handed up.  There's not a dispute that they're authentic or

5     what you filed, Ms. Lewis.

6          MS. LEWIS:  I haven't seen them, Your Honor.

7          THE COURT:  Yeah.  So let's -- Jennelle, can you

8     (indiscernible)?

9          MS. LEWIS:  Okay.

10         THE COURT:  Because I would like them made part of

11    the summary judgment record.  I think that needs to be based on

12    the way it was -- it has been argued and submitted.  Just for

13    purposes of review later.

14         MS. LEWIS:  I can review this while he's --

15         THE COURT:  Okay.  Go ahead.  And let's make sure --

16    get back to that before we exit the bench.  Because I might

17    otherwise -- we might otherwise forget.  Go ahead, Mr. Butt.

18         MR. BUTT:  Your Honor, the live complaint is Document

19    39.  And in Document 39, from Paragraphs 97 to 119 are 22

20    instances of alleged arrests without probable cause.  And that

21    is the support that the plaintiff has for his Monell claim on a

22    policy practice custom of false arrest.

23         Attached to Document 39 is an appendix.  It's over

24    100 cases that I understood were not -- or it was not withdrawn

25    and was certainly never amended that alleged evidence of other

 1   instances of policy practice and custom of false arrest by

 2   deputies.

 3          In my motion, I addressed that Appendix A and I found

 4   five instances of findings of probable cause from that

 5   appendix.  And then the plaintiff in his response, which is

 6   Document 105, attached a different list of instances of alleged

 7   arrests without probable cause.  That was Exhibit H.  That's

 8   the first time that list ever occurred in this case, and thus

 9   it was not disclosed in initial disclosures of supplementation.

10   And so I submit that it was not properly before the Court in

11   Document 105.

12          And with respect to the 22 instances within the

13   second amended complaint under the Peterson v. City of Fort

14   Worth, that is an insignificant number to show a policy

15   practice custom.  Likewise under Panetta v. City of Houston, it

16   is insignificant and statistically insignificant given that

17   this is a very large county with a large population.

18          And also would like to say that in my motion for the

19   county, I submitted the training records of Mark Cannon, the

20   sheriff's policies on use of force, on investigations, on

21   discipline, on proper conduct, and the arrest procedures.  So I

22   think the plaintiff has not sufficiently supported the

23   allegations against the county and the level of culpability

24   where the county is a very high level of deliberate

25   indifference, which is much more than negligence and a very

1    stringent standard according to Fifth Circuit case law.

2            And also would say that there's no evidence of

3    ratification.  That's reserved for extreme circumstances where

4    there is an obvious violation of clearly established law.  So I

5    submit that the Exhibit H of the Document 105 should not be

6    considered by the Court as it was not previously disclosed.

7    And the 22 instances of false arrest embedded in Document 39

8    are in -- of an -- in and of themselves insignificant to

9    establish a policy, practice, and custom.

10            And I would also note that for that Exhibit H, the

11   plaintiff's counsel has attempted to authenticate those

12   documents herself.  So I submit that's not proper

13   authentication.

14            THE COURT:  Okay.

15            MR. BUTT:  I don't have anything else, Your Honor.

16            THE COURT:  All right.  Thank you.

17            MR. BUTT:  Thank you.

18            THE COURT:  Ms. Lewis.

19            MS. LEWIS:  Yes, Your Honor.  And I'll go ahead and

20   give these admissions back to the Court now so --

21            THE COURT:  Okay.

22            MS. LEWIS:  I do this -- I used to do this with my

23   mom and say here are your admissions back.  What I give you so

24   --

25            THE COURT:  Okay.

```
 1              MS. LEWIS:  -- it won't be said I didn't give it

 2    back.  Your Honor, I do want to add, while you take that -- the

 3    record -- as it goes into the record, that admissions into the

 4    record, I want to be clear that the case that the defendant is

 5    citing to support the fact that that Admission Number 17 will

 6    -- is the same, I want to be clear that that's an admission

 7    that he -- that Mr. Alaniz took his hands away -- kept his

 8    hands away from being -- from Officer Cannon.

 9              The case that Ms. Bradley cites, it very specifically

10    says that the individual actually was -- his arm was actually

11    in the grasp already of the officer and he pulled it out of the

12    grasp of the officer versus pulling away so he couldn't -- so

13    that he could not arrest.  And that's because the Fifth Circuit

14    does speak to pulling away being, I'm sorry, a passive

15    resistance act.

16              THE COURT:  It -- depending on the context, yeah.  I

17    get it.

18              MS. LEWIS:  Yes.

19              THE COURT:  I mean, I had that from your response

20    that sometimes it's reflective as opposed to --

21              MS. LEWIS:  Absolutely.

22              THE COURT:  -- other things.  So --

23              MS. LEWIS:  Yes.  And I believe --

24              THE COURT:  So this will be docketed.  And -- or

25    you've agreed this is your request for admissions response,
```

1    correct?

2            MS. LEWIS:  I -- yes.  It is --

3            THE COURT:  All right.

4            MS. LEWIS:  -- an authentic copy of my request for --

5    excuse me, our responses.  I don't agree to them being

6    admitted, but they are authentic.

7            THE COURT:  Okay.  Jennelle, here are those.  Those

8    will be docketed following the minute entry.  Okay.  Go ahead.

9            MS. LEWIS:  Thank you.  Okay.  So as far as the

10   Monell claims are concerned, the actual -- obviously when we're

11   pleading, the instances that were added, those were withdrawn

12   first and foremost as was --

13           THE COURT:  What was withdrawn?

14           MS. LEWIS:  The appendix.  Remember -- well, you

15   probably don't remember, but when the case was brought before

16   you through the motion to dismiss, we withdrew them.  And I

17   believe --

18           THE COURT:  The Exhibit A you're talking about to

19   your second amended complaint?

20           MS. LEWIS:  Yes.  Mm hmm.

21           THE COURT:  Was withdrawn.

22           MS. LEWIS:  It is withdrawn.  And I believe I

23   indicated that in the response that that was withdrawn.  In

24   fact, I think -- yeah, the docket number was 71 and 70 -- yeah.

25           THE COURT:  Okay.  Yeah, notice -- Docket 71 Notice

```
 1    of Withdrawal of Appendix A --

 2              MS. LEWIS:  Yes.

 3              THE COURT:  -- to the second amended complaint.

 4              MS. LEWIS:  Okay.  And so obviously at this stage, at

 5    the summary judgment stage, we have to put up.  And so it's not

 6    just an allegation anymore.  It has to be these actual

 7    instances of the arrest.  Now, what's different from this

 8    particular case and Peterson v. The City of Fort Worth is very

 9    specific.  These cases that we have cited in the pleadings and

10    we have set forth in Exhibit H are all cases that are officer-

11    initiated arrests.

12              And that makes it different because it shows that

13    these officer-initiated arrests, which are fine, but when they

14    result in a dismissal for lack of probable cause, that is where

15    the need for discipline comes in and the need for retraining

16    comes in.  And that's what Harris County and the policymaker

17    Sheriff Gonzalez and failed to do.  After -- it comes to a

18    point of 10, 20, 30, 40, up to hundreds of these --

19              THE COURT:  How many are on Exhibit H?

20              MS. LEWIS:  I believe it is -- I have a lot, but I

21    believe on Exhibit H there might've been about -- let me pull

22    it up.  I'm sorry.  I know it was over 20 for sure.  But I have

23    an entire -- for trial I have an entire spreadsheet of the only

24    officer-initiated arrest dismissals without probable cause.  In

25    -- let's see.  I'm so sorry.  I should've anticipated that
```

1    question.

2              THE COURT:  Because Appendix A had more than 20.  But

3    --

4              MS. LEWIS:  Yes.

5              THE COURT:  -- maybe those weren't officer-initiated

6    arrests.

7              MS. LEWIS:  Well, they were outside of the timeframe

8    also, and some of them --

9              THE COURT:  Oh.

10             MS. LEWIS:  Yeah, they were like long before.

11             THE COURT:  Yeah, yeah.

12             MS. LEWIS:  I think they were like in 2016.  So it

13   was long before Sheriff Gonzalez had gotten into office.

14             THE COURT:  Right.

15             MS. LEWIS:  I think some of them actually were

16   dismissed for other reasons --

17             THE COURT:  Oh.

18             MS. LEWIS:  -- as well, yeah.  Not -- they were all

19   officer-initiated, but they were dismissed for, you know, other

20   reasons like pled guilty in another case and things of that

21   nature.  These are all clean and they were all dismissals

22   without probable cause.  And in that -- that is the reason why

23   Mr. -- we were setting forth as to why Mr. Alaniz was arrested

24   without probable cause and --

25             THE COURT:  Was there a request in discovery to have

```
 1    that -- what's on Exhibit H to have that or something

 2    approximate to that turned over?

 3             MS. LEWIS:  No, Your Honor.

 4             THE COURT:  As a part of discovery?

 5             MS. LEWIS:  No.  No, we -- this is public record.  We

 6    got all this information from public record.

 7             THE COURT:  Okay.

 8             MS. LEWIS:  And they obviously -- it's their agency,

 9    so they obviously have these records.

10             THE COURT:  Okay.

11             MS. LEWIS:  And probably much more.  But this is --

12    it was accessible through public records through the Harris

13    County District Clerk's website.

14             THE COURT:  Okay.  All right.

15             MS. LEWIS:  And as it relates to the authentication,

16    I don't believe -- I haven't heard from the defendants that

17    they're saying that these are not accurate records, that these

18    are false or fabricated public records.  They're just --

19    because I think there was -- well, I know I heard an argument

20    that Ms. Lewis has attempted to authenticate them herself.

21             But since it's a public record and it comes from the

22    clerk's website, unless they're saying these are falsified or

23    fabricated records, then it's sufficient for these purposes of

24    summary judgment.

25             THE COURT:  All right.
```

```
 1              MS. LEWIS:  Let's see.  As it relates to the Monell
 2    claims, as I was stating, as a result of the policy maker, not
 3    Mr. -- excuse me, Sheriff Gonzalez, not disciplining these
 4    officers, it allowed other officers to continue this pattern of
 5    practice of arresting people for reasons like, you know, you're
 6    not --
 7              THE COURT:  So of the instances that are on Exhibit H
 8    and that you talk about in your response, none of them are
 9    Deputy Cannon, right?
10              MS. LEWIS:  No.  No.
11              THE COURT:  And your argument is but others have done
12    this, which means Cannon should've been -- Cannon and everybody
13    should've been trained better on it.
14              MS. LEWIS:  Absolutely.
15              THE COURT:  Right.
16              MS. LEWIS:  Yes.
17              THE COURT:  And you base that on the reply references
18    22 instances.  So you think on Exhibit H it's 22 instances of
19    these officer-initiated arrests or is it --
20              MS. LEWIS:  At least, yes.
21              THE COURT:  Okay.
22              MS. LEWIS:  Mm hmm.  It --
23              THE COURT:  Okay.
24              MS. LEWIS:  I mean, I could've filled the court --
25    you know, this pleading with more pages and -- but I would
```

1   think the Court got a sense of where we were going with this.

2   There's plenty more.  It's -- I -- again, I have a spreadsheet,

3   and I can supplement the summary judgment as to the spreadsheet

4   that I have outlining everything if the Court would like on

5   that.  But I think that these that I've outlined show that

6   there's enough of Sheriff Gonzalez to have -- and these are

7   prior to Mr. Alaniz's arrest, I want to point, these are not

8   after his arrest, but there's plenty before to show that if

9   these officers were engaged in this pervasive practice, that

10  there was no discipline for.

11          And had they been disciplined, it would've shown

12  other officers that if you engage in this practice, then -- and

13  violating somebody's civil rights in this way, arresting them

14  without probable cause, then you will be disciplined.  And

15  training them to not -- if they didn't -- if they claim this is

16  ignorance and I just didn't know any better, I don't know

17  probable cause that well, then they should've been retrained on

18  those issues as well.

19          And so with all these different officers -- this is

20  not like the same officer keep -- that continued to do it.

21  These are different officers doing this.  So that shows a

22  county-wide issue that needs to be addressed and even still to

23  this day.  And I do have the continuing practice.  There's

24  hundreds more since Mr. Alaniz has been arrested as well.

25          So this is a continuing practice.  And the moving

 1   force -- we -- and I believe it's a deliberate indifference

 2   practice.  And as it relates to Mr. Alaniz specifically, he

 3   actually put in an IAD complaint, Internal Affairs Department

 4   complaint saying, hey, these officers did all these things to

 5   me.  You know, they arrested me.  They injured me, and you

 6   know, left all my property on the scene so anybody could steal

 7   it and take it.

 8          And so there was an investigation.  There was a

 9   review of the bodycam footage, and there was a conclusion that

10   there should not -- you know, there was no retraining as a

11   result afterwards.  There was no retraining.  They never --

12   even in their investigation, in the IAD investigation, nobody

13   said, hey, Cannon, why did you arrest him?  Why was he taken?

14   That -- there was never an inquiry on that.  Just simply that

15   there was no need for discipline.

16          And that show the deliberate indifference if it is

17   brought to his attention based on this case.  It demonstrates

18   that particularly.  Now, as it relates to the false arrest --

19   excuse me, the excessive force is the same thing, but we'll

20   focus more on the Monell as it relates to the false arrest, not

21   the excessive force.  In fact, I don't think that we did allege

22   excessive force to support Monell.  I'm not certain, but I

23   believe strongly that it rests on the arrest.

24          THE COURT:  I think so.

25          MS. LEWIS:  Yes.  And the retaliatory nature of these

```
 1    arrests.  And it's just -- it's so, you know, strong in every

 2    department.  I mean, I won't say every department, but many

 3    departments engage in this type of retaliatory, you know,

 4    arrest of -- and what we have been known to say, and Mr. Butt

 5    knows me intimately about this, failure to bow down.  I was a

 6    victim of a failure to bow down and being arrested, and Mr.

 7    Butt was --

 8              THE COURT:  You personally were.

 9              MS. LEWIS:  He didn't beat me up --

10              THE COURT:  You personally were.

11              MS. LEWIS:  Yes.

12              THE COURT:  Yes.

13              MS. LEWIS:  And he was opposing counsel.  He didn't

14    beat me up too bad, but it was -- but it's not just a Harris

15    County Sheriff's Office issue.  It is a lot of big law

16    enforcement issues --

17              THE COURT:  Okay.

18              MS. LEWIS:  -- of, you know, officers just not being

19    supervised strongly enough to say you can't do that.  You know,

20    this is -- there's a constitution here, and you know, you have

21    to have probable cause.  And I think a simple talk like that

22    after you see your officers arresting folks and it going before

23    a judge and there being a review by the prosecutors.  Because

24    this is the prosecutors that dismissed this case, it's not the

25    judges, that review the case.  And they conclude we're going to
```

1   dismiss this case because there's lack of probable cause.

2          Once that happens, the department should review those

3   with the officers and say, hey, we need to get together and

4   this cannot happen.  And that's not happening because there's

5   -- you know, there's no training and --

6          THE COURT:  Yeah.

7          MS. LEWIS:  -- no supervision.  So I think that's all

8   I really have --

9          THE COURT:  Okay.

10          MS. LEWIS:  -- as it relates to the Monell claim is

11   what I set forth.  I don't think -- I think I talked longer

12   than Mr. Butt about that.

13          THE COURT:  That's okay.

14          MS. LEWIS:  Yes.  So I'll let him rebut.

15          THE COURT:  Anything else?  Okay.

16          MS. LEWIS:  Oh, I do -- no, I think -- yeah, I think

17   that's -- that would be it.

18          THE COURT:  Okay.  Thank you.  Mr. Butts?  Jennelle,

19   could I get small binder clips?  Actually three.  Go ahead when

20   ready.

21          MR. BUTT:  Your Honor, I've looked at these

22   attachments to Exhibit H and they certainly are highlighted

23   with dismissals, but there are also other notations of

24   pleadings in the criminal files charging instruments and

25   probably cause statutory warnings.  So I am not in accord with

 1     the conclusions that the plaintiff has drawn from this data.

 2              And also, I am not sure we're picking up Houston

 3     Police Department arrests and other agency arrests in this mix.

 4     But the data does seem to show that there are some dismissals

 5     based upon lack of probable cause, but these were never

 6     disclosed in discovery.  And so --

 7              THE COURT:  Was there a -- and what was the discovery

 8     request?  I mean, I --

 9              MR. BUTT:  No, they were never disclosed in initial

10     disclosures.  In fact, the only initial disclosures of such

11     evidence were the 22 instances in Document 39.  And those were

12     disclosed on December the 12th, and actually Ms. Lewis had

13     meant to disclose them in October.  But...

14              THE COURT:  Okay.

15              MR. BUTT:  And as far as this information, I never

16     got any discovery requests to Harris County to produce this

17     information and --

18              THE COURT:  Well, no, I was wondering about your

19     requests to her --

20              MR. BUTT:  I did not request --

21              THE COURT:  -- to say -- but you had -- you're just

22     saying it should've been given it with initial disclosures.

23              MR. BUTT:  It should've been given as a disclosure

24     since she's using it, and she used another list and withdrew

25     it.  And the only constants from Document 39 was the 22

```
 1   particular instances --

 2             THE COURT:  That are in the paragraphs.

 3             MR. BUTT:  -- in the paragraphs.

 4             THE COURT:  Okay.  All right.  Good.  Thank you.

 5   Jennelle, can I get a stapler?  And do you have one more binder

 6   clip?  I just want to get all of this organized because I

 7   pulled it all apart.  All right.  Thanks, everyone.  I think

 8   that's all I have.  Anything else for me?

 9        (Hearing adjourned at 4:11 p.m.)

10                           * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          I N D E X

2

3                            RULINGS

4                                              Page        Line

5   Docket 111, Motion in limine, denied without

6   Prejudice                                    6           7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, court-approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8    *[signature: Sonya M. Ledanski Hyde]*

9

10   Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  May 1, 2025