United States District Court
Southern District of Texas
**ENTERED**
December 01, 2025
Nathan Ochsner, Clerk

# United States District Court
## Southern District of Texas
### Houston Division

| | | |
|---|---|---|
| Joe Anthony Alaniz, | § | Civil Action No |
| Plaintiff, | § | 4:22-cv-01991 |
| | § | |
| | § | |
| vs | § | Judge Charles Eskridge |
| | § | |
| | § | |
| Harris County, *et al*, | § | |
| Defendants. | § | |

## Opinion and Order
## on Motions for Summary Judgment

This action arises from the arrest of Plaintiff Joe Anthony Alaniz during a protest of the death of George Floyd. He alleges that Defendants Harris County and Mark Cannon, a deputy with the Harris County Sheriff's office, violated his civil rights when arresting him.

The motion by Harris County for summary judgment is granted. Dkt 97. The motion by Cannon for summary judgment is granted in part and denied in part. Dkt 98.

1. Background

Alaniz has or had a brain tumor, making him prone to seizures. Dkt 104-1 at 3 (Alaniz declaration). He thus wears an emergency medical alert disability bracelet on each wrist and often rides his bicycle for therapeutic purposes. Dkt 104-1 at 3–5.

On May 29, 2020, Alaniz was riding his bicycle in the downtown area of Houston when he came across a crowd gathered to protest the recent death of George Floyd. Dkt 97-4 at 1–2 (internal affairs report). Alaniz stopped and began filming the incident on his cell phone, streaming it to Facebook Live. See Dkt 104-5 (cell phone video). Numerous law enforcement officers, including Cannon,

had been deployed to keep protestors off the nearby highway and maintain order. See Dkt 98-6 at 6–7 (Oritz deposition).

Additional video footage from the bodycam of Sergeant Ana Ortiz shows a contentious encounter between police and protestors. Dkt 104-6; see also Dkt 104-3 (Cannon bodycam. Multiple protesters were taken to the ground and arrested as officers tried to control the crowd. See Dkt 104-6 at 19:57–20:02.

Alaniz asserts that he wasn't participating in the protest. See Dkt 104-1 at 3 (Alaniz declaration). Video instead shows him standing with his bicycle behind officers filming on his phone. Dkt 104-6 at 20:02:00–10. Ortiz approached him and told him to move because he was standing behind officers. Id at 20:03:27–41. Alaniz walked his bike across the street as he continued to film. Id at 20:03:41–20:04:11.

About seven minutes later, Ortiz ordered Alaniz to move with the protesters being cleared from the area. Id at 20:11:15–32. The following then occurred:

- o Cannon approached and said, "Do you want to move your bike or do you want to go with me?" Id at 20:11:32–40.

- o Cannon pointed, directing Alaniz to walk across the nearby field. Ibid.

- o Alaniz walked into the field with his bike. But he stopped after several steps and continued filming. Id at 20:11:40–51.

- o Officers told him to keep moving. Ibid.

- o Alaniz responded, "Relax, I'm not doing anything." Id at 20:12:10–15. Ortiz told Alaniz to move forward multiple times. Id at 20:12:19–35.

- o Cannon then ordered Alaniz to "get on [his] bike and drive." Id at 20:12:35–37.

- o Alaniz began walking with his bike while continuing to film. Id at 20:12:35–40.

- o Cannon began to count down from five seconds. Ibid. Alaniz said, "Hold on," and, "I'm moving." Dkt 104-5 at 1:22–30.

- o Cannon attempted to handcuff Alaniz and took him to the ground. Ibid.

- o Multiple officers then assisted placing Alaniz in handcuffs. Dkt 104-3 at 20:12:41–20:13:15.

Alaniz was then transported to the Harris County Joint Processing Center. Id at 20:16:40–20:17:10. A bicycle, wallet, and other property belonging to Alaniz were left at the scene. Dkt 104-1 at 5. No arrest report was generated, and he was never arraigned. Upon release, Alaniz went to the hospital and was diagnosed with a "right acromioclavicular [shoulder] separation." Dkt 103 at 112 (medical records).

Alaniz filed a complaint with the Internal Affairs Disciplinary Committee of the Harris County Sheriff's Office in June 2020. The Disciplinary Committee investigated the incident. It partially sustained Alaniz's complaint against Cannon, who was reprimanded for leaving Alaniz's property at the scene. Dkt 104-4 at 18–19 (letter of reprimand).

Alaniz filed his original complaint in state court in May 2022. He alleged claims under §1983 against Cannon and Ortiz, along with Sheriff Ed Gonzalez and Deputy Vanessa Esqueda, for false arrest, excessive force, and failure to protect from excessive force. Dkt 1-1 at ¶¶61–65. He also asserted similar claims against Harris County, including claims under the Americans with Disabilities Act. Id at ¶¶66–71.

Defendants removed. Dkt 1. Cannon moved to dismiss. Dkt 8. Alaniz amended his complaint. Dkt 12.

Defendants then moved to dismiss all claims against them. Dkts 15 (Harris County), 16 (Gonzalez) & 19 (Cannon). Alaniz filed no opposition. The motions were thus granted, and the first amended complaint was dismissed without prejudice. Dkt 23.

Alaniz filed a motion for reconsideration and a motion to amend. Dkts 25 & 29. The motion to amend was granted, but the claims against Esqueda and Ortiz were later dismissed again for failure to serve them. Dkts 28 & 35.

Alaniz then filed a second amended complaint. Dkt 39. Defendants again moved to dismiss all claims. Dkts 42 (Harris County), 44 (Gonzalez) & 45 (Cannon). Alaniz requested that video footage of the incident not be considered in resolving the motions to dismiss. Dkt 63 (objection by Plaintiff to video supplement to pleadings). It wasn't. The motion to dismiss by Harris County was denied as to the *Monell* claims under §1983 but granted as to claims under the ADA and §§1981, 1982 and 1985, which were dismissed with prejudice. Dkt 54 (minute entry). The motion to dismiss by Cannon was denied. Dkt 80 (order). All claims against Gonzalez were dismissed—the official capacity claims with prejudice, and the individual capacity claims without prejudice. See Dkts 54 & 80 at 14–15. And during a motion hearing in April 2025, Alaniz stipulated to the withdrawal of his claim under §1983 to the extent proceeding under the First Amendment. Dkt 121 (minute entry).

Now pending are motions for summary judgment by Cannon and Harris County. Dkts 97 & 98.

2.  Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2020). Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

### 3.    Motion for summary judgment by Cannon

Alaniz asserts two claims under §1983 against Cannon in his individual capacity for excessive force and false arrest. Dkt 39 at ¶77. Cannon seeks summary judgment on his affirmative defense of qualified immunity. Dkt 98.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v Callahan*, 555 US 223, 231 (2009), quoting *Harlow v Fitzgerald*, 457 US 800, 818 (1982). The availability of qualified immunity ultimately "turns only upon the objective reasonableness of the defendant's acts." *Thompson v Upshur County*, 245 F3d 447, 457 (5th Cir 2001) (emphasis in original).

"A qualified immunity defense alters the typical summary judgment burden of proof in that once the defense is pleaded by an official, the burden shifts to the plaintiff to rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established federal law." *Hunt v Pierson*, 730 F Appx 210, 215–16 (5th Cir 2018), citing *Brown v Callahan*, 623 F3d 259, 253 (5th Cir 2010). The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor. *Brown*, 623 F3d at 253. Even so, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is blatantly contradicted and utterly discredited by video recordings." *Hanks v Rogers*, 853 F3d 738, 744 (5th Cir 2017) (internal quotations and citation omitted).

a.   Excessive force

i.   Violation of a constitutional right

"A violation of the Fourth Amendment 'occurs when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force.'" *Spiller v Harris County*, 113 F4th 573, 576 (5th Cir 2024), quoting *Joseph ex rel Joseph v Bartlett*, 981 F3d 319, 332 (5th Cir 2020). "Determining whether force was excessive or unreasonable is a 'necessarily fact-intensive' and case-specific inquiry." *Spiller*, 113 F4th at 576 (internal quotations and citation omitted).

The parties don't dispute that Alaniz was injured due to a use of force. At issue is whether that force was clearly excessive, with the excessiveness itself being objectively unreasonable. Whether force is reasonable depends on the *Graham* factors, being (i) the severity of the crime at issue, (ii) whether the suspect poses an immediate threat to the safety of the officers or others, and (iii) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Hanks*, 853 F3d at 745, quoting *Graham v Connor*, 490 US 386, 396 (1989). Whether the force deployed was justified is viewed from "the perspective of a reasonable officer on the scene," taking account of the "individual

6

interests and the governmental interests at stake." *Barnes v Felix*, 605 US 73, 79 (2025) (citations omitted).

Applying the *Graham* factors and viewing the evidence in the light most favorable to Alaniz, the record contains disputed issues of material fact as to the reasonableness of Cannon's force. Summary judgment is thus inappropriate.

*As to severity*, the alleged crime was "not severe." See Dkt 98 at 20 (Cannon motion). Indeed, it's unclear whether any crime was committed at all. In any event, resisting arrest and/or disobeying a reasonable order to move are misdemeanors. See Tex Penal Code §38.03; Tex Penal Code §42.03. And misdemeanors don't typically support the use of force. See *Trammell v Fruge*, 868 F3d 332, 340 (5th Cir 2017). This factor weighs in favor of Alaniz's argument that the use of force by Cannon against him was unreasonable.

*As to dangerousness*, the parties dispute whether Alaniz posed an immediate threat to the safety of himself or others. When considering reasonableness, courts must account for the fact that police officers make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Graham*, 490 US at 396–97. Courts are thus to "consider the totality of the circumstances as perceived by a reasonable officer on the scene." *Hatcher v Bement*, 676 F Appx 238, 243 (5th Cir 2017) (internal quotation omitted).

Cannon emphasizes the tense and chaotic evening in question. Alaniz admits that he remembered people yelling at police and multiple protestors being taken to the ground. Dkt 98-5 at 16, 21 (Alaniz deposition). Ortiz testified that she was concerned about the safety of motorists, protestors, and law enforcement that day. Dkt 98-6 at 7 (Ortiz deposition). Protestors had also been "aggressive" and "throwing stuff" at officers, thus heightening safety concerns in general. Id at 12.

Even so, the videos at the time of arrest show that Alaniz was standing in an open field, filming with his cell phone, and walking his bike in the direction he'd been ordered to move. See Dkts 104-5 & 104-6. He wasn't

immediately adjacent to the street. And he neither verbally nor physically threatened the officers. Viewing the evidence in the light most favorable to Alaniz, it's not clear that a reasonable officer would have perceived immediate danger warranting force.

*As to resistance*, fact issues also remain regarding both Alaniz's resistance and the proportionality of Cannon's response. Officers may "consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v Marcantel*, 567 F3d 156, 167 (5th Cir 2009). However, "officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" Ibid.

The parties dispute the extent to which Alaniz complied with Cannon's order. The videos show that Cannon ordered Alaniz to "get on your bike and drive." Dkt 104-6 at 20:12:35–37. Alaniz did begin *walking* in the direction Cannon ordered him to go. In Alaniz's view, this meant he was complying with Cannon's order. Dkts 105 at 36 & 104-4 at 3. But Cannon argues that he arrested Alaniz not because he wasn't moving at all, but because Alaniz didn't get on his bike. Dkt 104-2 at 127 (Cannon deposition). Given the uneven nature of the rocky field and what was going on around them, it's unclear whether riding the bicycle was even possible. Material fact issues thus remain in this regard.

Most significantly, the parties dispute whether (and if so, to what extent) Alaniz resisted Cannon's attempt to detain and cuff him. Alaniz admits that he "pulled away from Deputy Cannon" during the attempted cuffing. Dkt 95-1 at 4. But Alaniz maintains that even if he did pull his arm away, it constituted passive resistance at most. Dkt 105 at 34. Use of force isn't justified where an individual's conduct amounts to mere passive resistance. See *Hanks*, 853 F3d at 746 (determining plaintiff's initial refusals to follow instructions were "at most, passive resistance" and didn't justify use of force). Indeed, in *Goodson v City of Corpus Christi*, 202 F3d 730, 740 (5th Cir

2000), the Fifth Circuit held that fact issues precluded summary judgment where the plaintiff pulled his arm away from arresting officers and was then tackled to the ground.

But even if Alaniz did pull his arm away from Cannon in a way justifying *some* use of force, a fact question remains regarding the reasonableness of the speed in which Cannon resorted to taking Alaniz all the way to the ground. *Trammell*, 868 F3d at 342 (finding "the quickness with which the officers resorted to tackling" plaintiff to weigh "against a finding of reasonableness").

Taken in the light most favorable to Alaniz, a reasonable jury could conclude that Cannon's use of force was excessive and objectively unreasonable under the circumstances.

### ii.   Clear establishment of that right

In a prior excessive-force case, the Fifth Circuit has said that the second prong of the qualified immunity analysis is better understood as encompassing "two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Tarver v City of Edna*, 410 F3d 745, 750 (5th Cir 2005). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." Ibid. Said another way, an officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v Rickard*, 572 US 765, 778–79 (2014).

The same factual disputes prevent finding—at least at the summary-judgment stage—that Cannon's conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. For example, in *Trammell v Fruge*, the plaintiff's "only physical

resistance to being tackled was his attempt to pull his arm away." 868 F3d at 341. The plaintiff was "neither aggressive nor violent toward officers" and was suspected of "only a minor offense." Id at 342. Because a reasonable jury could conclude the officers' force was excessive, summary judgment based on qualified immunity was inappropriate. Ibid. Likewise instructive is *Goodson v City of Corpus Christi*, 202 F3d at 730. Police there ordered the plaintiff to put his hands on the police car. Id at 734. An officer then grabbed the plaintiff's arm, prompting the plaintiff to pull his arm away, with officers then tackling him to the ground. Ibid. The Fifth Circuit held on summary judgment that a fact question remained as to the reasonableness of force under the circumstances. Id at 740.

*Trammell* and *Goodson* are both fair warning that such conduct may be unconstitutional. For the crime at issue here wasn't severe—if existent at all—and no threat of violence or aggression was apparent from Alaniz. His physical resistance amounted at most to pulling his arm away. Yet Cannon responded by taking him quickly and forcefully to the ground, injuring Alaniz's shoulder. To be clear, a jury may yet find that Cannon's use of force was reasonable. But it can't be found reasonable as a matter of law, given the disputed issues of material fact.

As such, Cannon isn't entitled to qualified immunity on the claim for excessive force. Summary judgment will thus be denied in that respect.

b. False arrest

Alaniz claims that Cannon also violated his Fourth Amendment right to be free from false arrest. Cannon argues that he had probable cause to detain Alaniz and is thus entitled to qualified immunity. Dkt 98 at 14.

To assert a valid claim under §1983 for false arrest, Alaniz must show that Cannon "did not have probable cause to arrest him." *Anokwuru v City of Houston*, 990 F3d 956, 963 (5th Cir 2021), quoting *Haggerty v Texas Southern University*, 391 F3d 653, 655 (5th Cir 2004) (citation omitted). "[T]he existence of probable cause for any offense,

including one not charged, is sufficient to defeat a §1983 false arrest claim." *Shemwell v Cannon*, 352 F Supp 3d 690, 701 (ND Tex 2019), citing *Devenpeck v Alford*, 543 US 146, 153–54 (2004). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty*, 391 F3d at 655–56 (quotation omitted).

Pertinent here, Cannon is entitled to qualified immunity if "a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair probability that [the suspect] had committed or was committing an offense." Id at 656, citing *Glenn v City of Tyler*, 242 F3d 307, 313 (5th Cir 2001). The Fifth Circuit in *Club Retro LLC v Hilton* explained the clearly-established prong in this regard this way:

> The Fourth Amendment right to be free from false arrest—arrest without probable cause—was clearly established at the time of [plaintiffs'] arrests. Nonetheless, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Thus, plaintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrests.

568 F3d 181, 206–07 (5th Cir 2009) (citations omitted).

Cannon argues that he had probable cause that Alaniz was committing the offense of resisting arrest. Dkt 98 at 28. Texas Penal Code §38.03 defines the crime of *resisting arrest* and provides in part:

> (a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence

and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

(b) It is no defense to prosecution under this section that the arrest or search was unlawful.

In Texas, the act of resisting can supply probable cause for the arrest itself. *Ramirez v Martinez*, 716 F3d 369, 376 (5th Cir 2013). And the "great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest." Ibid (collecting cases). In *Ramirez*, the plaintiff admitted that he "pulled his arm out of [the officer's] grasp" during the attempted arrest. Id at 377. And so, because the officer could reasonably conclude that a plaintiff committed the offense of resisting arrest by pulling his arm away, he was entitled to qualified immunity. Ibid.

The same is true here. Alaniz argues that Cannon lacked any probable cause for his arrest. Dkt 105 at 41. But Alaniz admits that he "pulled away from Deputy Cannon as he tried to cuff [Alaniz]." Dkt 95-1 at 4. Per *Ramirez*, this act of pulling away from Cannon during arrest, however minor, is enough for him to reasonably believe probable cause existed.

Cannon also argues that he had probable cause that Alaniz was disobeying a reasonable order to move. Dkt 98 at 28. Given the finding that Cannon had at least arguable probable cause as to resisting arrest, whether it also existed for disobeying a reasonable order to move needn't be analyzed.

Cannon is entitled to qualified immunity on the claim for false arrest. Summary judgment will thus be granted in that respect.

### 4. Motion for summary judgment by Harris County

Alaniz asserts §1983 liability against Harris County for failure to discipline, failure to train, and ratification of

Cannon's conduct. Dkt 39 at ¶¶78, 87–120. Harris County seeks summary judgment as to all claims. Dkt 97.

For a municipality to be liable under §1983, there must be an underlying constitutional violation. See *Pineda v City of Houston*, 291 F3d 325, 328 (5th Cir 2002). Almost all of the arguments by Alaniz against Harris County focus on false arrest. It has been determined above that there is no constitutional violation as to false arrest. Related claims against Harris County must therefore be dismissed on that basis. Even so, all of Alaniz's claims against Harris County will be addressed briefly.

Municipal liability under §1983 doesn't extend merely on a *respondeat superior* basis. *Monell v Department of Social Services*, 436 US 658, 691 (1978). The plaintiff must show "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda*, 291 F3d at 328. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Doe v Edgewood Independent School District*, 964 F3d 351, 364–65 (5th Cir 2020) (emphasis in original), quoting *Pembaur v Cincinnati*, 475 US 469, 479 (1986).

a.   Unconstitutional policy or practice

Alaniz maintains that Harris County is liable for unconstitutional policies by failing to discipline officers for arrests made without probable cause, and by "permitting and encouraging" excessive force. Dkt 105 at 22, 47–48. Such contention is untenable because Alaniz fails to establish an official policy or custom, causation, or demonstrate knowledge by the policymaker.

*As to an official policy,* a plaintiff may plead one of two types of policies. One is "a policy statement formally announced by an official policymaker." *Zarnow v City of Wichita Falls*, 614 F3d 161, 168 (5th Cir 2010). The other

is "a practice so persistent and widespread as to practically have the force of law." *Ratliff v Aransas County*, 948 F3d 281, 285 (5th Cir 2020) (quotation marks and citation omitted).

Alaniz nowhere links his claim to an official written policy. In fact, Harris County highlights that it had appropriate written policies regarding use of force and arrest procedures in place. See Dkt 97-11 (Harris County Sheriff's Office Department Policies). And to establish an official custom, one act alone is not enough; there must be a "persistent and widespread practice." *Pineda*, 291 F3d at 329. When considering whether a series of incidents amounts to an official pattern or custom, the "size of a police department may [also] be relevant." *Peterson v City of Fort Worth, Texas*, 588 F3d 838, 851 (5th Cir 2009).

In *Peterson*, the Fifth Circuit rejected the plaintiff's theory because it lacked factual development. Ibid. Specifically, the court held twenty-seven complaints over four years insufficient to establish an official custom of excessive force because the plaintiff failed to provide evidence as to the size of the police department or the number of total arrests made in the relevant period. Id at 851–52; see also *Pineda*, 291 F3d at 329: "Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces."

Regarding false arrest, Alaniz argues that Harris County has a policy to review all arrests and yet has never taken disciplinary action against an officer for arresting without probable cause. Dkt 105 at 47–48. That failure to discipline, he says, is the "moving force" behind his injury. Id at 48. He relies on Exhibit H to show "dozens" of examples of individuals arrested without probable cause. Dkts 105 at 47 & 105-1 (exhibit H). And he says that there's "not a single instance" of Harris County "disciplining, training, or retraining its officers" for false arrest. Dkt 105 at 26. In his view, this failure to discipline amounts to an official, unconstitutional policy.

14

Harris County objects to the admission of Exhibit H on hearsay grounds. Dkt 107 at 2; see Dkt 105-1 (Exhibit H). But counsel for Plaintiff provided a declaration attesting that the records were derived from the Harris County Clerk's office website, establishing authenticity. Dkt 105-1 at 4–5. And, though hearsay, these records appear to fall within the public-records exception of Federal Rule of Evidence 803(8). Exhibit H is thus likely admissible.

Even so, Alaniz hasn't provided necessary context for Exhibit H to demonstrate that arrests without probable cause amount to an official custom. He provides neither evidence of the total number of arrests between 2018 and 2020, nor the size of the police department. Without such evidence, and as a matter of law, the unexplained "dozens" of cases he cites cannot amount to an official policy. In addition, to show that there is not a single instance of Harris County disciplining its officers after false arrest, he cites only to Harris County's own written policies, which include proper arrest procedures. Dkt 105 at 26. This isn't enough to raise a genuine issue of fact as to whether failure to discipline its officers for false arrest is attributable to Harris County as an official custom.

Regarding excessive force, Alaniz makes the bare allegation in his "undisputed facts" section that "[Harris County] has a practice, custom, culture, procedure, and training of permitting and encouraging excessive force against suspects, inmates, and persons in their custody." Dkt 105 at 22. In support, he again cites to Exhibit H, which includes only purported arrests without probable cause. It's thus irrelevant to the excessive force accusations. He also cites to Harris County's written policies at Exhibit I, which state, "In every situation, the use of force will be avoided if reasonably possible." See Dkt 104-7 at 36. But Alaniz provides no evidence of a custom regarding excessive force that could be said to override this written policy.

*As to policymaker,* a city cannot be liable for an unwritten custom unless "[a]ctual or constructive knowledge of such custom" is attributable to a city

policymaker. *Webster v City of Houston*, 735 F3d 838, 841 (5th Cir 1984). Alaniz hasn't provided evidence of such knowledge. He states simply that Ed Gonzalez was the policymaker at the time, while citing to *Webster* for the proposition that "the course of conduct warrants the attribution to the [City's] governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." Dkt 105 at 48–49, citing 735 F2d at 842. This in no way connects the actual or constructive knowledge of any custom (much less add to any proof that such a custom exists).

*As to causation*, Alaniz says that the putative custom of failing to discipline offers the "moving force behind the pervasive practice by Harris County Sheriff's officers." Dkt 105 at 48. This is also too tenuous to sustain his claim. For aside from conclusory statements, he provides no evidence that his injury arose from any failure of Harris County to discipline other officers. Dkt 105 at 48.

Summary judgment will be entered on behalf of Harris County as to the *Monell* theory with respect to unconstitutional policy or practice.

b.  Failure to train

The Supreme Court observes, "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v Thompson*, 563 US 51, 61 (2011). But a decision by a local government not to train certain employees about their legal duty to avoid violating citizens' rights may in some circumstances rise to the level of an official government policy for purposes of §1983. Id at 61–62.

To state such a claim, a plaintiff must plead that (i) the training procedures of the municipality's policymaker were inadequate; (ii) the policymaker was deliberately indifferent in adopting the training policy; and (iii) the inadequate training policy directly caused the plaintiff's injury. *Conner v Travis County*, 209 F3d 794, 796 (5th Cir 2000), quoting *Baker v Putnal*, 75 F3d 190, 200 (5th Cir 1996).

*As to inadequate training*, municipal liability doesn't attach merely because "a particular officer may be unsatisfactorily trained" or "an otherwise sound program has occasionally been negligently administered." *City of Canton v Harris*, 489 US 378, 390–91 (1989). The Fifth Circuit directs with the first element that the focus must be on the adequacy of the training program in relation to the tasks the particular officer must perform. *Snyder v Trepagnier*, 142 F3d 791, 798 (5th Cir 1998), quoting *City of Canton*, 489 US at 390. And so to defeat a motion for summary judgment, the plaintiff must allege with specificity how the training program is defective in this regard. *Roberts v City of Shreveport*, 397 F3d 287, 293 (5th Cir 2005).

Alaniz appears to contend that Harris County failed to adequately train as to (i) arrest without probable cause, (ii) use of excessive force, and (iii) recognizing emergency medical bracelets. Dkt 105 at 45–47. Such vague and conclusory allegations can't sustain his claims. Alaniz also fails to identify specific deficiencies in the training programs.

With respect to false arrest, Alaniz cites only to the fact that Cannon said he wasn't comfortable with the Fourth Amendment. Dkt 105 at 47. But it's undisputed that Cannon did receive training that satisfied state standards. See Dkts 97 at 16–17 & 97-6 (Cannon training records). "[I]f training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that this legal minimum of training was inadequate to enable officers to deal with the 'usual and recurring situations' faced by jailers and peace officers." *O'Neal v City of San Antonio*, 344 F Appx 885, 888 (5th Cir 2009), quoting *Benavides v County of Wilson,* 955 F2d 968, 973 (5th Cir 1992). Regardless, that an officer expressed discomfort with the Fourth Amendment doesn't show that the training program itself is defective. See *City of Canton,* 489 US at 390–91: "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have

resulted from factors other than a faulty training program."

With respect to excessive force, Alaniz doesn't even argue that the training is inadequate.

With respect to training regarding medical bracelets, Alaniz cites no legal authority demonstrating an obligation for such training or that such training is necessary to enable officers to "respond properly to the usual and recurring situations with which they must deal." See Dkt 105 at 46; *Benavides*, 955 F2d at 973, quoting *City of Canton*, 489 US at 391.

Alaniz thus fails to identify any specific training program or show how it is inadequate.

*As to deliberate indifference*, Alaniz also fails to meet his burden. This is "a stringent standard of fault," one "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick* 563 US at 61 (citation omitted). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Ibid. A municipality's deliberate indifference typically requires a plaintiff to allege a pattern of similar constitutional violations by untrained employees. Id at 62.

Only as to false arrest does Alaniz even attempt to provide *any* evidence of a pattern of purported unconstitutional conduct. See Dkt 105-1 (Exhibit H). But even if Exhibit H is accepted as true, it doesn't reveal any information about the training that involved officers received or its inadequacy. It's also not sufficiently specific to show that any training itself was inadequate. And in line with other determination above about pattern, given the number of arrests that Harris County makes year over year, Alaniz purporting to point to "dozens" of arrests without probable cause over multiple years can't sustain

the allegation that policymakers were deliberately indifferent to the constitutional rights of its citizens.

If a plaintiff can't allege a pattern, "it is still possible to establish deliberate indifference through the single-incident exception." *Hutcheson v Dallas County*, 994 F3d 477, 482 (5th Cir 2021) But that exception is "extremely narrow" and requires the plaintiff to "prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." Ibid. Such exception is generally reserved for cases where the municipality provided no training at all. Id at 483. That isn't the situation here. Cannon received extensive training regarding arrest procedures, search and seizure, use of force, and first aid. See Dkt 97-6 (Cannon training records).

*As to causation*, Alaniz again hasn't shown that inadequate training was the "moving force" in his injury. His assertions are conclusory and fail to demonstrate a causal connection between the purported lack of training and his injury. Dkt 105 at 46.

Alaniz fails to carry his burden as to all three elements of his failure-to-train theory. Summary judgment will be entered in favor of Harris County on such claim.

c.   Ratification

Alaniz further alleges that Harris County is liable because it ratified the "unconstitutional practice of unlawful arrest without probable cause" by failing to discipline officers for such conduct. Dkt 105 at 51.

The Fifth Circuit limits the theory of ratification to "extreme factual situations." *Peterson*, 588 F3d at 848. Under such precedent, this case can't be considered an extreme situation. Compare *Grandstaff v City of Borger*, 767 F2d 161, 168 (5th Cir 1985) (finding ratification where officers "poured" gunfire onto a truck and killed innocent occupant), with *Snyder*, 142 F3d at 798 (declining to find ratification in case where officer shot fleeing suspect in back); *Peterson*, 588 F3d at 848 (declining to find ratification where officer detained suspect and struck his knee); *World Wide Street Preachers Fellowship v Town of*

19

*Columbia*, 591 F3d 747, 755 (5th Cir 2009) (declining to find ratification where officer told protesters to leave intersection).

And regardless, ratification requires the *approval* of a policymaker, not mere acquiescence or failure to discipline, as Alaniz argues here. See *Benfer v City of Baytown, Texas*, 120 F4th 1272, 1287 (5th Cir 2024), citing *Allen v Hays*, 65 F4th 736, 749 n 10 (5th Cir 2023) (cleaned up): "Ratification can suffice for *Monell* liability only if the authorized policymakers approve a subordinate's decision and the basis for it."

Summary judgment will thus be entered in favor of Harris County on the ratification claim.

5.  Conclusion

The motion by Defendant Harris County for summary judgment is GRANTED. Dkt 97.

The claims against it are DISMISSED WITH PREJUDICE.

The motion by Defendant Deputy Mark Cannon for summary judgment is GRANTED IN PART and DENIED IN PART. Dkt 98.

It is GRANTED as to the claim for false arrest, which is DISMISSED WITH PREJUDICE.

It is DENIED as to the claim for excessive force.

SO ORDERED.

Signed on December 1, 2025, at Houston, Texas.

Hon Charles Eskridge
United States District Judge

20